## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALABAMA ASSOCIATION OF REALTORS®,
522 Washington Avenue
Montgomery, AL 36104

DANNY FORDHAM,
2835 Zelda Road
Montgomery, AL 36106

FORDHAM & ASSOCIATES, LLC,
2835 Zelda Road
Montgomery, AL 36106

H.E. CAUTHEN LAND AND DEVELOPMENT, LLC,
P.O. Box 241622
Montgomery, AL 36124

GEORGIA ASSOCIATION OF REALTORS®,
6065 Barfield Road, NE
Atlanta, GA 30328

ROBERT GILSTRAP,
276 Cline Drive, SW
Cartersville, GA 30120

TITLE ONE MANAGEMENT, LLC,
975 Cobb Place Boulevard, NW Suite 215
Kennesaw, GA 30144,

   *Plaintiffs,*

 *v.*

UNITED STATES DEPARTMENT OF HEALTH
AND HUMAN SERVICES,
200 Independence Avenue, S.W.
Washington, DC 20201

ALEX M. AZAR II, in his official capacity as
Secretary of Health and Human Services,
200 Independence Avenue, S.W.
Washington, DC 20201

UNITED STATES DEPARTMENT OF JUSTICE,
950 Pennsylvania Avenue, NW
Washington, DC 20530

Civil Action No. 20-3377

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

WILLIAM P. BARR, in his official capacity as
Attorney General,
950 Pennsylvania Avenue, NW
Washington, DC 20530

CENTERS FOR DISEASE CONTROL AND
PREVENTION,
1600 Clifton Road
Atlanta, GA 30329

ROBERT R. REDFIELD, in his official capacity as
Director of the Centers for Disease Control and
Prevention,
1600 Clifton Road
Atlanta, GA 30329

NINA B. WITKOFSKY, in her official capacity as
Acting Chief of Staff, Centers for Disease Control and
Prevention,
1600 Clifton Road
Atlanta, GA 30329,

                    *Defendants.*

Plaintiffs Alabama Association of REALTORS®, Danny Fordham, Fordham & Associates, LLC, H.E. Cauthen Land and Development, LLC, Georgia Association of REALTORS®, Robert Gilstrap, and Title One Management, LLC ("Plaintiffs"), by and through their undersigned attorneys, allege as follows:

## INTRODUCTION

1.      The COVID-19 pandemic has taken a devastating toll on the American economy, costing millions of workers their jobs and forcing thousands of small businesses to close.

2.      Federal, state, and local governments have taken significant steps to provide economic relief, including most notably the federal Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), a $2.2 trillion economic stimulus bill enacted in March 2020.

3. Among its measures, the CARES Act provided for a 120-day federal eviction moratorium for properties covered by federal assistance programs or subject to federally-backed loans. *See* CARES Act § 4024, Pub. L. 116-36, 134 Stat. 281 (2020). The CARES Act eviction moratorium expired by operation of law on July 24, 2020.

4. Weeks after the CARES Act eviction moratorium expired, the President directed the Centers for Disease Control and Prevention (the "CDC") to provide even more expansive eviction relief through executive action. Fighting the Spread of COVID-19 by Providing Assistance to Renters and Homeowners, Exec. Order No. 13945, 85 Fed. Reg. 49,935 (Aug. 8, 2020) (the "Executive Order").

5. The CDC followed the President's directive by issuing a "Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID-19" (the "Eviction Moratorium") that covers all residential properties in the United States. *See* 85 Fed. Reg. 55,292 (Sept. 4, 2020).

6. Subject to criminal penalties, the Eviction Moratorium prohibits landlords from evicting certain tenants, on a nationwide basis, until at least December 31, 2020.

7. The CDC's goal of easing the economic impact of COVID-19 is laudable. But in attempting to do so without statutory authorization or following the rulemaking process required by the Administrative Procedure Act ("APA"), the CDC has unilaterally shifted billions of dollars in economic burdens from one group of Americans, renters, to another, landlords. In many cases, these landlords, including Plaintiffs here, are small business owners who have themselves suffered economic losses as a result of the pandemic. The Eviction Moratorium will cause landlords across the country to lose $55-76 billion in unpaid rent—and billions more if the Eviction Moratorium is extended into 2021.

8. The Court should hold unlawful and set aside the Eviction Moratorium because it is an improper exercise of executive authority that does not comply with federal law.

9.      The Eviction Moratorium is procedurally defective because the CDC adopted a rule without following the APA's notice-and-comment requirements or considering the impact on small businesses like Plaintiffs, as required by the Regulatory Flexibility Act.

10.     The Eviction Moratorium exceeds the CDC's statutory authority because Section 361 of the Public Health Service Act contains no authority to adopt a nationwide moratorium on evictions. Congress foreclosed the CDC from adopting a nationwide eviction moratorium in Section 361 and by allowing the CARES Act's narrower eviction moratorium to expire after 120 days. Regardless of how serious the problem, the CDC may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted.

11.     The Eviction Moratorium is arbitrary and capricious because the CDC failed to reasonably explain why the eviction moratoria adopted by 42 states throughout the COVID-19 pandemic are insufficient to tackle the problem that the CDC sought to address. In addition, the CDC failed to reasonably explain how the CDC's implementing regulation authorizes it to regulate the entire U.S. rental property market. The CDC failed entirely to weigh the Eviction Moratorium's costs against its benefits. And the CDC failed to reasonably explain its definitions for the two key terms in the Eviction Moratorium—"covered person" and "eviction."

12.     Finally, the Eviction Moratorium raises serious constitutional questions. If Section 361 of the Public Health Service Act confers such broad authority upon the CDC to adopt an eviction moratorium, the statute would violate the nondelegation doctrine because it contains no intelligible principle guiding the CDC's exercise of its authority. The Eviction Moratorium is also unconstitutional because it effectuates a taking of private property without just compensation, violates procedural due process, and infringes on the right of access to the courts.

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction over this case under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the APA and the United States Constitution.  *See* 5 U.S.C. § 702.

14.     This Court has the authority to grant declaratory relief and to vacate and set aside the Eviction Moratorium under the Declaratory Judgment Act, the APA, and this Court's inherent equitable powers.  *See* 28 U.S.C. §§ 2201, 2202; 5 U.S.C. §§ 702, 706.

15.     Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(A) and 5 U.S.C. § 703.

**PARTIES**

16.     Plaintiff Alabama Association of REALTORS® ("AAR") is the largest organization of real estate professionals in Alabama.  It is a trade association organized under Section 501(c)(6) of the Internal Revenue Code and headquartered in Montgomery, AL.  Many of AAR's members own residential properties that they lease to tenants.  AAR has standing because the CDC's Eviction Moratorium has caused financial harm to AAR's members, including Plaintiff Danny Fordham, by preventing them from evicting tenants for nonpayment of rent and from leasing their properties to tenants willing and able to pay rent.  This lawsuit is germane to AAR's purposes because AAR advocates for Alabama's real estate industry before state, local, and federal governments and the courts.  The participation of AAR's individual members is unnecessary in this litigation.

17.     Plaintiff Danny Fordham is a licensed real estate professional who manages 75 residential properties in Montgomery County, Alabama through two limited liability companies: Plaintiff Fordham & Associates, LLC and Plaintiff H.E. Cauthen Land and Development, LLC ("H.E. Cauthen").  Fordham is a member of AAR.  In September 2020, Fordham began the eviction process under state law by delivering written notices to two tenants who collectively owe approximately $5,700. In response, these tenants submitted declarations to Fordham pursuant to the Eviction Moratorium, preventing him from continuing to pursue the evictions by filing and serving a summons and

complaint in state court. Fordham would also pursue evictions of at least seven other tenants who are severely past due in rent payments and each of whom owe Fordham more than $2,000 in unpaid rent, but he cannot do so because the Eviction Moratorium has effectively halted eviction proceedings in state courts throughout Alabama. For example, the Circuit Court in Montgomery County, Alabama has issued an Administrative Order requiring a landlord to verify, before filing an eviction action, that the subject tenant is not a covered person and has not submitted a declaration under the Eviction Moratorium. *See* Administrative Order (Ala. Fifteenth Cir. Ct. Sept. 10, 2020), *available at* https://montgomery.alacourt.gov/media/1063/cdc-administrative-order.pdf. Fordham has the legal right to evict these tenants under state law. Fordham has standing because he has suffered, and continues to suffer, significant economic damages in the form of unpaid rent, lost opportunity to rent or use the properties at their fair market value, and regular maintenance and utilities costs as a result of the Eviction Moratorium. A court order declaring unlawful and setting aside the Eviction Moratorium would redress his injury because he could evict the nonpaying tenants in state court without violating federal criminal law.

18.     Plaintiff Fordham & Associates, LLC is a real estate company headquartered in Montgomery, AL. Plaintiff Danny Fordham is the sole member of Fordham & Associates, through which he owns and manages residential properties as described above. Fordham & Associates, LLC manages one of the properties occupied by a tenant who provided a CDC declaration to Fordham. Fordham & Associates, LLC has the legal right to evict the tenant under state law. Fordham & Associates, LLC has standing because it has suffered, and continues to suffer, significant economic damages in the form of unpaid rent, lost opportunity to rent or use the property at its fair market value, and regular maintenance and utilities costs as a result of the Eviction Moratorium. A court order declaring unlawful and setting aside the Eviction Moratorium would redress its injury because it could evict the nonpaying tenants in state court without violating federal criminal law.

19.     Plaintiff H.E. Cauthen is a real estate company headquartered in Montgomery, AL. Plaintiff Danny Fordham is a member of H.E. Cauthen, through which he owns and manages residential properties as described above.  H.E. Cauthen manages one of the properties occupied by a tenant who provided a CDC declaration to Fordham.  H.E. Cauthen has the legal right to evict the tenant under state law.  H.E. Cauthen has standing because it has suffered, and continues to suffer, significant economic damages in the form of unpaid rent, lost opportunity to rent or use the property at its fair market value, and regular maintenance and utilities costs as a result of the Eviction Moratorium.  A court order declaring unlawful and setting aside the Eviction Moratorium would redress its injury because it could evict the nonpaying tenants in state court without violating federal criminal law.

20.     Plaintiff Georgia Association of REALTORS® ("GAR") is the largest organization of real estate professionals in Georgia.  It is a trade association organized under Section 501(c)(6) of the Internal Revenue Code and headquartered in Atlanta, GA.  Many of GAR's members own residential properties that they lease to tenants.  GAR has standing because the Eviction Moratorium has caused financial harm to GAR's members, including Plaintiff Robert Gilstrap, because it has prevented them from evicting tenants for nonpayment of rent and from leasing their properties to tenants willing and able to pay rent.  This lawsuit is germane to GAR's purposes because GAR advocates for Georgia's real estate industry before state, local, and federal governments and in the courts.  The participation of GAR's individual members is unnecessary in this litigation.

21.     Plaintiff Robert Gilstrap is a licensed real estate professional in Georgia and the sole member of Plaintiff Title One Management, LLC ("Title One").  Gilstrap is a member of GAR. Gilstrap is the beneficiary of a trust that owns approximately 40 properties managed by Title One.  A tenant of one of the properties that Title One manages, located in Marietta, GA, owes approximately $10,000 in unpaid rent.  The tenants who reside at this property make nearly $97,000 a year.  They

have also refused to allow maintenance to be performed on their property. These tenants were initially entitled to eviction forbearance under the CARES Act. Once the federal eviction forbearance in that statute expired, Title One sought to proceed with eviction proceedings, but could not do so because the tenants submitted a declaration under the Eviction Moratorium. Title One has not been able to proceed to an eviction hearing because of the Eviction Moratorium. Title One has also received such declarations from other tenants. Another tenant of one of the properties that Title One manages, located in Riverdale, GA, owes approximately $7,500 in unpaid rent. Title One initiated eviction proceedings against this tenant and obtained a writ of possession, which the court rescinded after the tenant submitted a declaration under the Eviction Moratorium. But for the Eviction Moratorium, Title One would have evicted this tenant as well. Gilstrap has the legal right to evict these tenants under state law. Gilstrap has standing because he has suffered, and continues to suffer, significant economic damages in the form of unpaid rent, lost opportunity to rent or use the properties at their fair market value, and regular maintenance and utilities costs as a result of the Eviction Moratorium. A court order declaring unlawful and setting aside the Eviction Moratorium would redress his injury because he could evict the nonpaying tenants in state court without violating federal criminal law.

22.     Plaintiff Title One Management, LLC is a real estate company headquartered in Kennesaw, GA. Title One manages more than 400 residential properties in Georgia. Title One is the lessor of all properties it manages and has the legal right to pursue eviction of tenants leasing such properties. Title One manages the properties occupied by tenants who provided CDC declarations to Gilstrap that are the subject of the eviction proceedings described in the previous paragraph. Title One has standing because it has suffered, and continues to suffer, significant economic damages in the form of unpaid rent, lost opportunity to rent or use the property at its fair market value, and regular maintenance and utilities costs as a result of the Eviction Moratorium. A court order declaring

unlawful and setting aside the Eviction Moratorium would redress its injury because it could evict the nonpaying tenants in state court without violating federal criminal law.

23.     Defendant United States Department of Health and Human Services ("HHS") is an agency of the United States government.

24.     Defendant Alex M. Azar II is the Secretary of HHS and is sued in his official capacity.

25.     Defendant United States Department of Justice ("DOJ") is an agency of the United States government.

26.     Defendant William P. Barr is the Attorney General of the United States and agency head of DOJ.  He is sued in his official capacity.

27.     Defendant Centers for Disease Control and Prevention ("CDC") is an agency of the United States government located within HHS.

28.     Robert R. Redfield is the Director of the CDC. The CDC's public statement announcing the Eviction Moratorium states that the order was issued by Director Redfield.  He is sued in his official capacity.

29.     Defendant Nina B. Witkofsky is the CDC Acting Chief of Staff under whose name the Eviction Moratorium was issued.  She is sued in her official capacity.

## STATEMENT OF FACTS

### I.      The COVID-19 Emergency and the CARES Act

30.     The COVID-19 pandemic has taken a devastating toll on Americans' lives and livelihoods in 2020.  Hundreds of thousands have died as a result of the virus; millions of workers have lost their jobs; and thousands of small businesses have permanently shuttered.

31.     In response to the COVID-19 emergency and its economic effects, in March 2020, Congress passed and the President signed the CARES Act, a $2.2 trillion economic stimulus bill.  *See* Pub. L. 116-136, 134 Stat. 281 (2020).

32.     Among other relief measures, the CARES Act prohibited landlords of certain "covered dwellings" from initiating eviction proceedings or "charg[ing] fees, penalties, or other charges" against a tenant for the nonpayment of rent for 120 days following the statute's March 27, 2020 enactment.  *See* Pub. L. 116-136 § 4024(b).  The CARES Act also prohibited landlords from issuing notices to vacate during the same 120-day period.  *See id.* § 4024(c).

33.     Significantly, the CARES Act's prohibition on eviction from "covered dwelling[s]" applied only to properties covered by federal assistance programs or subject to federally-backed loans. *See id.* § 4024(a).

34.     The federal eviction protections enacted in the CARES Act expired on July 24, 2020. Although Congress has considered legislation that would extend the CARES Act moratorium and, at the same time, provide additional financial assistance to renters, no such bill has been signed into law. *See, e.g.*, Emergency Housing Protections and Relief Act of 2020, H.R.7301,  116th Cong. 2d. Sess. (as passed by House June 29, 2020).

## II.     State and Local Eviction Moratoria

35.     In addition to the federal relief that Congress provided through the CARES Act, 42 states have provided eviction relief during the pandemic, but most states have allowed their eviction moratoria to expire by now.

36.     For example, Alabama Governor Kay Ivey issued an emergency proclamation on April 3, 2020, which she amended on May 8, 2020.  Governor Ivey's proclamation prohibited "state, county, and local law enforcement officers" from "enforc[ing] any order that would result in the displacement of a person from his or her place of residence for reasons related to the nonpayment of their lease, mortgage, or other payment obligation."  *See* Gov. Kay Ivey, Ninth Supplemental State of Emergency: Coronavirus (COVID-19) at 2 (May 8, 2020), https://governor.alabama.gov/assets/2020/05/2020-05-08-9th-Supplemental-SOE-COVID-19.pdf.

9

37.     The Alabama moratorium on evictions announced in Governor Ivey's proclamations expired on June 1, 2020, three months before the CDC issued the Eviction Moratorium.  *See* Gov. Kay Ivey, Tenth Supplemental State of Emergency: Coronavirus (COVID-19) (May 21, 2020), https://governor.alabama.gov/newsroom/2020/05/tenth-supplemental-state-of-emergency-coronavirus-covid-19/.

38.     Georgia Governor Brian Kemp did not issue a state-wide eviction moratorium.

## III.     Additional Federal Housing Relief

39.     Although Congress has passed no additional federal eviction relief since the CARES Act eviction moratorium expired, the federal government has taken a variety of steps to provide housing assistance aside from the statutory moratorium.

40.     For example, on March 18, 2020, the U.S. Department of Housing and Urban Development ("HUD") authorized a 60-day moratorium on foreclosures of mortgages insured by the Federal Housing Agency ("FHA") and evictions from properties securing FHA-insured mortgages. *See* Dep't of Housing and Urban Development, Mortgagee Letter 2020-04 (Mar. 18, 2020), https://www.hud.gov/sites/dfiles/OCHCO/documents /20-04hsgml.pdf.  That moratorium has been extended through December 31, 2020.  *See* Dep't of Housing and Urban Development, Mortgagee Letter 2020-27 (Aug. 27, 2020), https://www.hud.gov/sites/dfiles/OCHCO/documents/2020-27hsgml.pdf.

41.     Also on March 18, 2020, the Federal Housing Finance Agency ("FHFA") directed government-sponsored entities (including Fannie Mae and Freddie Mac) to suspend foreclosures and evictions for at least 60 days.  That suspension has also been extended through December 31, 2020. *See* Fed. Housing Fin. Agency, FHFA Extends Foreclosure and REO Eviction Moratoriums (Aug. 27, 2020),   https://www.fhfa.gov/Media/PublicAffairs/Pages/FHFA-Extends-Foreclosure-and-REO-Eviction-Moratoriums.aspx.

42. And the Department of Veterans Affairs ("VA"), too, has prohibited the initiation of foreclosure and eviction proceedings on properties secured by VA-guaranteed loans. *See* Dep't of Veterans Affairs, Veterans Benefits Administration, Circular No. 26-20-29 (Aug. 24, 2020), https://www.benefits.va.gov/HOMELOANS/documents/circulars/26-20-29.pdf (last accessed Nov. 9, 2020); Circular No. 26-20-30 (Aug. 24, 2020), https://www.benefits.va.gov /HOMELOANS/documents/circulars/26-20-29.pdf.

## IV.     Executive Order

43. On August 8, 2020, the President issued an Executive Order directing the federal government to provide additional eviction relief beyond that provided in the CARES Act. *See* Executive Order.

44. As the President explained, "[t]he CARES Act imposed a temporary moratorium on evictions … [that] has now expired, and there is a significant risk that this will set off an abnormally large wave of evictions. With the failure of the Congress to act, my Administration must do all that it can to help vulnerable populations stay in their homes in the midst of this pandemic. … Unlike the Congress, I cannot sit idly and refuse to assist vulnerable Americans in need." Executive Order § 1.

45. Among other measures, the Executive Order directed the Secretary of HHS and the Director of the CDC to "consider whether any measures temporarily halting residential evictions of any tenants for failure to pay rent are reasonably necessary to prevent the further spread of COVID-19 from one State or possession into any other State or Possession." *Id.* § 3(a).

## V.     The CDC's Eviction Moratorium and Guidance

46. Less than a month after the Executive Order, and after the CARES Act eviction moratorium had expired—without providing public notice or soliciting comment—the CDC published the Eviction Moratorium in the Federal Register on September 4, 2020, effective immediately.

47.     The Eviction Moratorium provides that "a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action, shall not evict any covered person from any residential property in any jurisdiction to which this Order applies," through at least December 31, 2020.  85 Fed. Reg. 55,292.

48.     The Eviction Moratorium defines "evict" to mean "any action by a landlord, owner of a residential property,  or other person with a legal right to pursue eviction or a possessory action,. to remove or cause the removal of a covered person from a residential property.  This does not include foreclosure on a home mortgage." 85 Fed. Reg. 55,293.

49.     The Eviction Moratorium defines "covered person" to mean "any tenant, lessee, or resident of a residential property who provides to their landlord, the owner of the residential property, or other person with a legal right to pursue eviction or a possessory action, a declaration under penalty of perjury indicating that" the person meets certain criteria.  *Id.*

50.     A "residential property" is "any property leased for residential purposes, including any house, building, mobile home or land in a mobile home park, or similar dwelling leased for residential purposes, but shall not include any hotel, motel, or other guest house rented to a temporary guest or seasonal tenant as defined under the laws of the State, territorial, tribal, or local jurisdiction."  *Id.*

51.     To invoke the Eviction Moratorium's protections, a covered person must execute and return to the landlord a declaration provided in a form attached to the Eviction Moratorium.  *See id.* & Attachment A.  After the covered person does so, "unless the CDC order is extended, changed, or ended," a covered person may not be "evicted or removed from where they are living through December 31, 2020."  85 Fed. Reg. 55,292.

52.     The Eviction Moratorium provides that it "does not apply in any State, local, territorial, or tribal area with a moratorium on residential evictions that provides the same or greater level of public-health protection than the requirements listed in this Order."  *Id.*  Further, it does not relieve

12

rent payments or prohibit interest charges for overdue payments; nor does it preclude evictions for certain reasons other than non-payment of rent. *See id.*

53. The Eviction Moratorium threatens landlords with harsh criminal penalties—a fine of more than $100,000 for individuals or $200,000 for organizations—to be enforced by DOJ. *See id.* at 55,296.

54. The Eviction Moratorium admits its economic significance. As it explains, the Office of Information and Regulatory Affairs "has determined that [the Eviction Moratorium] would be a major rule under the Congressional Review Act (CRA)," *see id.*, which defines a "major rule" as one with "an annual effect on the economy of $100,000,000 or more," 5 U.S.C. § 804(2)(a).

55. As authority for the Eviction Moratorium, the CDC invoked Section 361 of the Public Health Service Act, 42 U.S.C. § 264, and a CDC regulation implementing that statute, 42 C.F.R. § 70.2, but the CDC provided no analysis of this authority in the Eviction Moratorium.

56. Section 361 authorizes the CDC to promulgate regulations to "prevent the introduction, transmission, or spread of communicable diseases" into the United States or among the States. 42 U.S.C. § 264(a). The next sentence permits the CDC to "provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." *Id.*

57. The CDC's regulation implementing Section 361 permits the Director of the CDC, upon "determin[ation] that the measures taken by health authorities of any State or possession . . . are insufficient to prevent the spread of any of the communicable diseases," to "take such measures to prevent such spread of the diseases as he/she deems reasonably necessary, including inspection, fumigation, disinfection, sanitation, pest extermination, and destruction of animals or articles believed to be sources of infection." 42 C.F.R. § 70.2.

58.     After publishing the Eviction Moratorium, the CDC issued a related Frequently Asked Questions document (the "FAQ"), which raised more questions than it answered.  *See* Centers for Disease Control and Prevention, HHS/CDC Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19 Frequently Asked Questions, https://www.cdc.gov/coronavirus/2019-ncov/downloads/eviction-moratoria-order-faqs.pdf.  The FAQ provides that the Eviction Moratorium is not "intended to prevent landlords from starting eviction proceedings, provided that the actual eviction of a covered person for non-payment of rent does NOT take place during the period of the Order."  FAQ at 1.

## VI.     Impact on U.S. Rental Property Market

59.     The U.S. rental property market consists of 41,946,055 million rental units, which are owned by 10-11 million landlords.  Rental payments amount to more than $552 billion each year. Individual landlords like Plaintiffs in this case—not institutional investors—own and manage 72% of rental properties.

60.     While Plaintiffs are suffering thousands of dollars in economic loss as a result of the Eviction Moratorium, landlords across the country stand to lose billions of dollars as a result of the Eviction Moratorium.

61.     According to the CDC, 30-40 million people who live in 12-17 million housing units are at risk of eviction.  At the median rent of $1,097, the rent not paid by these individuals—who are the most likely to be covered by the Eviction Moratorium—amounts to $14-19 billion per month or $55-76 billion during the four months that the Eviction Moratorium is effective.

62.     If the Eviction Moratorium is extended for a year, landlords would lose more than $165-228 billion in unpaid rent caused by the Eviction Moratorium.

## CLAIMS FOR RELIEF

### Count I—Violation of Administrative Procedure Act
### The CDC Failed to Observe the Notice and Comment Procedure Required by Law

63.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

64.     The Eviction Moratorium is an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.  It represents the consummation of the CDC's decision-making process with respect to a COVID-19-related eviction moratorium.  And it affects Plaintiffs' legal rights and obligations because it prevents them from enforcing their property rights by evicting or taking steps to evict tenants who have not paid rent.

65.     A court must "hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

66.     The APA requires agencies to issue rules through a notice-and-comment process.  *See* 5 U.S.C. § 553.

67.     The Eviction Moratorium is a rule within the meaning of the APA because it is "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4).

68.     The CDC issued the Eviction Moratorium without engaging in the notice-and-comment process.  *See* 5 U.S.C. § 553.

69.     Good cause does not excuse the CDC's failure to comply with the notice-and-comment process.  *See* 5 U.S.C. § 553(b)(3)(B).

70.     This Court should hold unlawful and set aside the Eviction Moratorium because it violates the APA's notice-and-comment requirement.  5 U.S.C. § 706(2)(D).

## Count II—Violation of Administrative Procedure Act
## The Eviction Moratorium Does Not Comply with the Regulatory Flexibility Act

71.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

72.     A court must "hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

73.     The Regulatory Flexibility Act requires agencies, in promulgating rules subject to the APA's notice-and-comment requirement, to "prepare a final regulatory flexibility analysis."  *See* 5 U.S.C. § 604(a).

74.     The Eviction Moratorium is a "rule" for purposes of the Regulatory Flexibility Act. *See* 5 U.S.C. § 601(2).

75.     Plaintiff Fordham & Associates, LLC is a "small businesses" because it is independently owned and operated, is not dominant in its field of operation, and collects less than $30 million in annual receipts.  *See* 5 U.S.C. § 601(3); 15 U.S.C. § 632(a)(2); 13 C.F.R. §§ 121.101(a), 121.201.

76.     Plaintiff H.E. Cauthen is a "small businesses" because it is independently owned and operated, is not dominant in its field of operation, and collects less than $30 million in annual receipts. *See* 5 U.S.C. § 601(3); 15 U.S.C. § 632(a)(2); 13 C.F.R. §§ 121.101(a), 121.201.

77.     Plaintiff Title One is a "small businesses" because it is independently owned and operated, is not dominant in its field of operation, and collects less than $30 million in annual receipts. *See* 5 U.S.C. § 601(3); 15 U.S.C. § 632(a)(2); 13 C.F.R. §§ 121.101(a), 121.201.

78.     The CDC has not prepared a regulatory flexibility analysis as required by the Regulatory Flexibility Act.

79.     Nor has Director Redfield certified, in order to excuse compliance, that the Eviction Moratorium will not "have a significant economic impact on a substantial number of small entities." 5 U.S.C. §§ 605(b), 608(b).

80.     This Court should hold unlawful and set aside the Eviction Moratorium because it violates the Regulatory Flexibility Act.  5 U.S.C. 706(2)(D).

**Count III—Violation of Administrative Procedure Act**
**The Eviction Moratorium Exceeds the CDC's Statutory Authority**

81.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

82.     A court must "hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. 706(2)(C).

83.     The Eviction Moratorium exceeds the CDC's authority under Section 361 of the Public Health Service Act.  42 U.S.C. § 264.  Section 361 does not clearly authorize the CDC to make a decision of such economic and political significance.  Moreover, Congress unambiguously foreclosed the CDC from adopting the Eviction Moratorium in Section 361 and by allowing the CARES Act's eviction moratorium to expire.  *See* Pub. L. 116-136, § 4024.  The CDC's interpretation of Section 361 as authorizing the Eviction Moratorium is not entitled to *Chevron* deference.

84.     This Court should hold unlawful and set aside the Eviction Moratorium because the CDC acted "in excess of" its statutory authority.  5 U.S.C. § 706(2)(C).

**Count IV—Violation of Administrative Procedure Act**
**Arbitrary and Capricious Agency Action**

85.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

86.     A court must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, [or] an abuse of discretion."  5 U.S.C. § 706(2)(A).

87.     The CDC's Eviction Moratorium is arbitrary and capricious because it fails to comply with the agency's own regulations.  The CDC's regulation requires it to find "that the measures taken by health authorities of any State or possession (including political subdivisions thereof) are insufficient to prevent the spread of any of the communicable diseases from such State or possession to any other State or possession."  42 C.F.R. § 70.2.  The CDC failed to reasonably explain that the Eviction Moratorium satisfies this regulatory requirement.  The Eviction Moratorium includes only a conclusory statement that "measures by states, localities, or U.S. territories that do not meet or exceed" its scope "are insufficient to prevent the interstate spread of COVID-19."   *See* 85 Fed. Reg. 55,296.  The CDC's bare restatement of the regulatory text does not reasonably explain that the Eviction Moratorium satisfied the requirements of 42 C.F.R. § 70.2.

88.     The CDC's Eviction Moratorium is arbitrary and capricious because the CDC failed to explain how the cited regulation authorizes an economic measure like the Eviction Moratorium.

89.     The CDC's Eviction Moratorium is arbitrary and capricious because the CDC failed to consider and justify the costs of the Eviction Moratorium.

90.     The CDC's Eviction Moratorium is arbitrary and capricious because the CDC failed to reasonably explain the key terms "covered person" and "evict" in the Eviction Moratorium.

91.     This Court should hold unlawful and set aside the Eviction Moratorium because it is arbitrary and capricious.  *See* 5 U.S.C. § 706(2)(A).

### Count V—Violation of the Separation of Powers
### Improper Delegation of Legislative Power

92.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

93.     The U.S. Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States."  U.S. Const. art. I, § 1.  Under the nondelegation doctrine,

Congress cannot transfer legislative power to the Executive Branch. Acts of Congress must supply an intelligible principle to guide the Executive Branch's enforcement discretion.

94.     To the extent it authorizes the Eviction Moratorium, Section 361 of the Public Health Service Act, 42 U.S.C. § 264, violates Article I's Vesting Clause and the separation of powers because Congress delegated legislative power to the CDC with no intelligible principle to guide its discretion. That section authorizes the CDC "to make and enforce such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases . . . from one State or possession into any other State or possession." 42 U.S.C. § 264(a). The statute further provides that the CDC may take certain specific measures as well as "other measures, as in [its] judgment may be necessary." *Id.* If Section 361 is so broad as to authorize the Eviction Moratorium, then Congress provided no intelligible principle to guide the CDC's discretion to take actions that "are" or "may be necessary" to "prevent the introduction, transmission, or spread of communicable diseases." *Id.* Vesting the CDC with such broad authority and discretion without an intelligible principle violates the nondelegation doctrine.

95.     This Court should declare that Section 361 of the Public Health Service Act is unconstitutional because it violates Article I and the separation of powers.

### Count VI—Violation of the Administrative Procedure Act
### Deprivation of Property Without Just Compensation

96.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

97.     A court must "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

98.     The Takings Clause of the Fifth Amendment provides that no "private property shall be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause

protects property owners from both physical and regulatory takings.  It also protects property owners from both permanent and temporary takings.

99.     Plaintiffs hold legally protected interests in their real property and in their contractual and statutory rights to pursue eviction.

100.    The Eviction Moratorium constitutes a physical taking of Plaintiffs' property for which the government has not provided just compensation because it allows covered persons to occupy Plaintiffs' real property without paying rent.

101.    The Eviction Moratorium also constitutes a regulatory taking of Plaintiffs' property for which the government has not provided just compensation because it has caused Plaintiffs economic harm and interfered with their investment-backed expectations, and will continue to do so.

102.    The Eviction Moratorium has deprived Plaintiffs of an important legal remedy to protect their ownership rights and recover possession of their property.  It has also deprived Plaintiffs of the full value of their property by impairing their ability to maintain a consistent stream of rent.

103.    This Court should hold unlawful and set aside the Eviction Moratorium as "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

**Count VII— Violation of the Administrative Procedure Act**
**Deprivation of Procedural Due Process**

104.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

105.    A court must "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

106.    The Fifth Amendment's Due Process Clause states: "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  Where a government

action deprives an individual of a protected life, liberty, or property interest, the Due Process Clause requires, at minimum, fair notice and an opportunity to be heard.

107.    Plaintiffs hold legally protected interests in their real property and in their contractual and statutory rights to pursue eviction.

108.    The Eviction Moratorium deprives Plaintiffs of these rights without satisfying the requirements of due process.

109.    In addition, the Eviction Moratorium is unconstitutionally vague.  It defines "evict" to mean "any action . . . to remove or cause the removal of a covered person," which could include any action from the initial step of providing written notice to filing a complaint to ultimately directing the execution of a writ of possession.  85 Fed. Reg. 55,293.  Yet the CDC issued guidance suggesting that the Moratorium is not "intended to prevent landlords from starting eviction proceedings."  *See* FAQ at 1.

110.    This Court should hold unlawful and set aside the Eviction Moratorium as "contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

### Count VIII— Violation of the Administrative Procedure Act
### Deprivation of Access to Courts

111.    Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs as though set forth fully herein.

112.    A court must "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(B).

113.    The Constitution safeguards the right of access to courts for the redress of grievances. That right is grounded in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal

Protection, and Due Process Clauses. This right is violated when an official action frustrates a plaintiff's ability to file and prosecute suits.

114. The Eviction Moratorium is an official action that prohibits Plaintiffs from pursuing evictions under state law and authorizes federal criminal penalties against Plaintiffs if they do so. Defendants, by issuing and enforcing the Eviction Moratorium, have deprived Plaintiffs of their right of access to courts.

115. This Court should hold unlawful and set aside the Eviction Moratorium as "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief:

116. A declaration, order, and judgment holding unlawful, enjoining, and setting aside the CDC's Eviction Moratorium;

117. A declaration, order, and judgment holding that Section 361(a) of the Public Health Service Act, 42 U.S.C. § 264, is unconstitutional;

118. A permanent injunction enjoining Defendants from enforcing the CDC's Eviction Moratorium;

119. An award of all costs and attorneys' fees pursuant to any applicable statute or authority;

120. Any other relief this Court deems just and proper.

Dated: November 20, 2020

Respectfully submitted,

*s/ Brett A. Shumate*

Brett A. Shumate (D.C. Bar No. 974673)
Charlotte H. Taylor (D.C. Bar No. 1024658)
   (application pending)
Megan Lacy Owen (D.C. Bar No. 1007688)
   (*pro hac vice* forthcoming)
Stephen J. Kenny (D.C. Bar No. 1027711)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Autumn Hamit Patterson
   (Texas Bar No. 24092947)
   (*pro hac vice* forthcoming)
JONES DAY
2727 N. Harwood St.
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile: (214) 969-5100

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system.  I further certify that, on November 20, 2020, I caused the foregoing document to be sent via certified mail to:

**United States Department of Health and Human Services**
200 Independence Avenue, S.W.
Washington, DC 20201

**Alex M. Azar II**
Secretary of Health and Human Services
200 Independence Avenue, S.W.
Washington, DC 20201

**United States Department of Justice**
950 Pennsylvania Avenue, NW
Washington, DC 20530

**William P. Barr**
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

**Centers for Disease Control and Prevention**
1600 Clifton Road
Atlanta, GA 30329

**Robert D. Redfield**
Director, Centers for Disease Control and Prevention
1600 Clifton Road
Atlanta, GA 30329

**Nina B. Witkofsky**
Acting Chief of Staff, Centers for Disease Control and Prevention
1600 Clifton Road
Atlanta, GA 30329

**Civil Process Clerk**
United States Attorney's Office
District of Columbia
555 4th  Street, N.W.
Washington, D.C. 20530

In addition, I served the following attorneys via electronic mail on this date:

Eric Beckenhauer
Leslie Cooper Vigen
Steven A. Myers
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-0727
Fax: (202) 616-8470
eric.beckenhauer@usdoj.gov
leslie.vigen@usdoj.gov
steven.a.myers@usdoj.gov

November 20, 2020                                   _s/ Brett A. Shumate_
                                                    Brett A. Shumate