**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ALABAMA ASSOCIATION OF REALTORS®, *et al.*,

*Plaintiffs,*

*v.*

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,

*Defendants.*

No. 1:20-cv-03377-DLF

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Congress Did Not Ratify The September 4, 2020 Eviction Moratorium .......... 2

II. Even If Congress Ratified The September 4, 2020 Eviction Moratorium, Congress Did Not Ratify The CDC's January 29, 2021 Extension of the Eviction Moratorium .......... 4

III. The Court Should Grant Expedited Summary Judgment to Plaintiffs .......... 6

CONCLUSION .......... 7

CERTIFICATE OF SERVICE .......... 9

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Fed'n of Gov't Emps. v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*,
133 F. Supp. 2d 75 (D.D.C. 2001) ........ 2, 3, 4

*Ass'n of Cmty. Cancer Ctrs. v. Azar*,
No. CV CCB-20-3531, 2020 WL 7640818 (D. Md. Dec. 23, 2020) ........ 6

*Chamber of Com. of U.S. v. DHS*,
No. 20-CV-07331-JSW, 2020 WL 7043877 (N.D. Cal. Dec. 1, 2020) ........ 5

*EEOC v. CBS, Inc.*,
743 F.2d 969 (2d Cir. 1984) ........ 2

*Ex parte Endo*,
323 U.S. 283 (1944) ........ 2, 3

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
460 F.3d 13 (D.C. Cir. 2006) ........ 2, 4

*In Def. of Animals v. Salazar*,
675 F. Supp. 2d 89 (D.D.C. 2009) ........ 2, 3

*Isbrandtsen-Moller Co. v. United States*,
300 U.S. 139 (1937) ........ 2

*Itserve All., Inc. v. Scalia*,
No. CV 20-14604 (SRC), 2020 WL 7074391 (D.N.J. Dec. 3, 2020) ........ 6

*James v. Hodel*,
696 F. Supp. 699 (D.D.C. 1988) ........ 3, 4

*James v. Lujan*,
893 F.2d 1404 (D.C. Cir. 1990) ........ 3

**Merck & Co. v. HHS*,
962 F.3d 531 (D.C. Cir. 2020) ........ 4

*Patchak v. Jewell*,
109 F. Supp. 3d 152 (D.D.C. 2015) ........ 3

*Patchak v. Zinke*,
138 S. Ct. 897 (2018) ........ 3

*Purdue Univ. v. Scalia*,
No. CV 20-3006 (EGS), 2020 WL 7340156 (D.D.C. Dec. 14, 2020) ........ 6

*Regeneron Pharms., Inc. v. HHS*,
No. 20-CV-10488 (KMK), 2020 WL 7778037 (S.D.N.Y. Dec. 30, 2020) ........ 5

*Schism v. United States*,
316 F.3d 1259 (Fed. Cir. 2002) (en banc) ........ 2, 3

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Thomas v. Network Sols., Inc.*,
176 F.3d 500 (D.C. Cir. 1999) .......... 3, 4

**STATUTES**

42 U.S.C. § 264 .......... 4

Consolidated Appropriations Act, 2021,
Pub. L. No. 116-260, 134 Stat. 1182 (2020) .......... 1, 3, 5, 7

Coronavirus Aid, Relief, and Economic Security Act,
Pub. L. No. 116-136, 134 Stat. 281 (2020) .......... 5, 7

**OTHER AUTHORITIES**

Alex M. Azar II, "Determination That A Public Health Emergency Exists,"
U.S Dep't of Health & Human Servs. (Jan. 31, 2020) .......... 7

CDC, Statement from CDC Director Rochelle P. Walensky, MD, MPH,
on Extending the Eviction Moratorium (Jan. 20, 2021) .......... 7

Fed. R. Civ. P. 57 .......... 6

Letter from Charlie Oppler, 2021 President, National Association of REALTORS®,
to United States Senate (Feb. 1, 2021) .......... 6, 7

## INTRODUCTION

The Centers for Disease Control and Prevention ("CDC") has again flouted the statutory constraints on its authority. When Congress passed additional COVID-19 relief at the end of 2020, Congress merely extended the CDC's Eviction Moratorium for one month. *See* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. N, tit. V, § 502, 134 Stat. 1182, 2079 (2020). Despite the fact that Congress decided that the extended Eviction Moratorium would expire on January 31, 2021, the CDC further extended the Eviction Moratorium until March 31, 2021. The CDC thus repeated the same pattern of unlawful behavior that it demonstrated after the expiration of the statutory eviction moratorium in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"): It exceeded congressional limits on its authority, disregarded the Administrative Procedure Act's ("APA") notice-and-comment requirement, and relied upon an unconstitutional statute to issue an unconstitutional order.

Seeking to avoid this conclusion, the CDC insists that Congress ratified the Eviction Moratorium in the Consolidated Appropriations Act by merely extending the CDC's September 4, 2020 order until January 31, 2021. But the one-month statutory extension did not ratify the CDC's order, nor did it bestow new authority on the CDC to regulate all rental properties in the United States. Ample case law demonstrates that Congress knows how to ratify agency action—with express ratification language or a purposeful appropriation that enables an agency to exercise the claimed authority—but Congress did not do so in the Consolidated Appropriations Act. In any event, even if the Consolidated Appropriations Act ratified the CDC's September 4, 2020 order, Congress did not ratify—and could not have ratified—the CDC's January 29, 2021 order extending the Eviction Moratorium beyond the new expiration date set by Congress. Therefore, the Court should deny Defendants' partial motion to dismiss and grant expedited summary judgment to Plaintiffs.

## ARGUMENT

### I. Congress Did Not Ratify The September 4, 2020 Eviction Moratorium.

Although Congress can ratify unlawful agency action and provide authority that an agency previously lacked, Congress did not do so in the Consolidated Appropriations Act. To ratify agency action, Congress must expressly ratify the agency's order or appropriate funds in a way that gives the agency the precise authority it previously lacked. Because Congress did neither when it extended the CDC's September 4, 2020 Eviction Moratorium, Defendants' partial motion to dismiss should be denied.

It is well established that congressional ratification must be clear. Congress must "expressly ratify [unauthorized] actions in clear and unequivocal language," *EEOC v. CBS, Inc.*, 743 F.2d 969, 974 (2d Cir. 1984), or through an appropriations act if it "plainly show[s] a purpose to bestow the precise authority which is claimed," *Ex parte Endo*, 323 U.S. 283, 303 n.24 (1944); *see Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 n.7 (D.C. Cir. 2006) (recognizing ratification can occur when there is "[a] clear statement of congressional approval" (citing *Schism v. United States*, 316 F.3d 1259, 1290–91 (Fed. Cir. 2002) (en banc))); *Schism*, 316 F.3d at 1290 ("[I]n order for ratification to occur the appropriation act itself must show a purpose to bestow the precise authority claimed and previously lacking."); *In Def. of Animals v. Salazar*, 675 F. Supp. 2d 89, 102 (D.D.C. 2009) (similar). In other words, Congress can ratify agency action when a statute says that an action "is hereby ratified and approved and shall be given full force and effect." *Am. Fed'n of Gov't Emps. v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 133 F. Supp. 2d 75, 77–78 (D.D.C. 2001). In the appropriations context, Congress can ratify an order by expressly referring to that order in the legislation and then appropriating funds to carry out that order's precise provisions. *See Isbrandtsen-Moller Co. v. United States*, 300 U.S. 139, 146–48 (1937) (concluding that Congress "ratified the President's action" of abolishing the Shipping Board and transferring its functions to the Department of Commerce when

Congress referred to the executive order and appropriated funds to the Department to carry out what were previously the Board's functions).

Congress took neither step to ratify the CDC's Eviction Moratorium. The Consolidated Appropriations Act provides that "[t]he order issued by the Centers for Disease Control and Prevention . . . is extended through January 31, 2021, notwithstanding the effective dates specified in such Order." Pub. L. No. 116-260, § 502. Although Congress extended the CDC's September 4, 2020 order, Congress did not expressly ratify it, even though Congress knows and frequently uses the language necessary to ratify agency action. *Compare Thomas v. Network Sols., Inc.*, 176 F.3d 500, 505 (D.C. Cir. 1999) ("is hereby legalized and ratified and confirmed as fully to all intents and purposes as if the same had, by prior act of Congress, been specifically authorized and directed"); *Patchak v. Jewell*, 109 F. Supp. 3d 152, 158 (D.D.C. 2015) ("are ratified and confirmed"), *aff'd*, 828 F.3d 995 (D.C. Cir. 2016), *aff'd sub nom. Patchak v. Zinke*, 138 S. Ct. 897 (2018); *Am. Fed'n of Gov't Emps.*, 133 F. Supp. 2d at 77–78 ("is hereby ratified and approved"); *James v. Hodel*, 696 F. Supp. 699, 701 (D.D.C. 1988) ("Congress hereby ratifies and confirms"), *aff'd sub nom. James v. Lujan*, 893 F.2d 1404 (D.C. Cir. 1990). Nor did Congress expressly say anything about the legality of the CDC's Eviction Moratorium by merely extending the order for another month.

Neither did Congress appropriate any sums to the CDC, *see Schism*, 316 F.3d at 1289–90, direct the CDC to take any action, *see In Def. of Animals*, 675 F. Supp. 2d at 101–02, or "plainly show [through an appropriation] a purpose to bestow the precise authority which is claimed," *Ex parte Endo*, 323 U.S. at 303 n.24. Instead, Congress's brief extension of the Eviction Moratorium in the Consolidated Appropriations Act was self-executing, thus requiring—and authorizing—the CDC to do absolutely nothing. Congress accordingly did not ratify the CDC's order or confer any authority on the CDC through the statutory extension.

None of the cases cited by Defendants support the conclusion that Congress ratified the CDC's Eviction Moratorium. Defendants cite no case—and Plaintiffs are aware of none—in which a court held that a mere statutory extension of agency action amounted to congressional ratification. In one case cited by Defendants, the D.C. Circuit declined to find congressional ratification where the appropriations act did not clearly approve the agency's action, even though Congress appropriated funds for the challenged agency program. *See Fund for Animals*, 460 F.3d at 19 & n.7. And in the other cases cited by Defendants, Congress expressly "ratified" the past action in the legislation, which did not occur here. *See Thomas*, 176 F.3d at 505; *James*, 696 F. Supp. at 701; *Am. Fed'n of Gov't Emps.*, 133 F. Supp. 2d at 77–78. Defendants' partial motion to dismiss should therefore be denied.

## II. Even If Congress Ratified The September 4, 2020 Eviction Moratorium, Congress Did Not Ratify The CDC's January 29, 2021 Extension of the Eviction Moratorium.

Defendants' contention that Congress ratified the CDC's September 4, 2020 Eviction Moratorium fails for yet another reason. Congress did not ratify—and could not have ratified—the CDC's January 29, 2021 extension of the Eviction Moratorium beyond the expiration date set in the Consolidated Appropriations Act. Because the January 29, 2021 extension suffers from the same legal flaws as the September 4, 2020 Eviction Moratorium, the Court should grant summary judgment to Plaintiffs for the reasons already explained. ECF 6-1, at 8–41.

Indeed, as Plaintiffs have explained, Congress unambiguously precluded the CDC from issuing or extending the Eviction Moratorium by speaking to the "precise question at issue." *Merck & Co. v. HHS*, 962 F.3d 531, 535 (D.C. Cir. 2020). Not only has Congress specified in Section 361 of the Public Health Service Act the precise action the CDC could take to regulate the interstate movement of persons who might spread a communicable disease—quarantine, 42 U.S.C. § 264(b)–(d)—but Congress has now *twice* decided the specific question of a nationwide eviction moratorium during the COVID-19 pandemic. First, Congress provided for a limited, 120-day eviction moratorium

in the CARES Act, which expired on July 24, 2020. *See* Pub. L. No. 116-136, § 4024, 134 Stat. 281, 493–94 (2020). Second, Congress decided in the Consolidated Appropriations Act to extend the CDC's Eviction Moratorium until January 31, 2021. *See* Pub. L. No. 116-260, § 502.

The CDC, however, *twice* ignored Congress's precise instructions regarding the proper scope and duration of an eviction moratorium during the COVID-19 pandemic. The length of the moratorium matters because it is such a radical intervention into economic life; each passing month imposes greater costs directly on landlords. However laudable the CDC's public health goals may be, it cannot simply overrule Congress's balancing of the benefits of a moratorium against its accumulating costs. To be sure, Congress paired rental assistance with its statutory extension of the CDC's Eviction Moratorium, but this just proves the point. Although Congress determined that rental assistance would mitigate some of the Eviction Moratorium's costs, the CDC has simply overridden this legislative bargain by extending the Eviction Moratorium without additional financial assistance. Congress's action, along with Section 361's plain language, confirms that the CDC exceeded its statutory authority by imposing and extending the Eviction Moratorium.

Finally, the CDC's January 29, 2021 extension of the Eviction Moratorium also violates the APA's notice-and-comment requirement for the reasons Plaintiffs have already explained. Even if good cause excused the CDC's initial decision to bypass the APA in September 2020, which it did not, the CDC lacks good cause to indefinitely suspend the APA to regulate the economy during a pandemic of indefinite duration. The government's reliance on COVID-19 to impose economic regulations without following the APA appears to be a case of a boy who cried wolf one too many times. *See, e.g.*, *Purdue Univ. v. Scalia*, No. CV 20-3006 (EGS), 2020 WL 7340156, at *7 (D.D.C. Dec. 14, 2020) (rejecting argument that Department of Labor ("DOL") had to take "immediate action" based on the "'the shock to the labor market' resulting from the COVID-19 outbreak in the United States" because "the effects resulting from the pandemic had been ongoing for several months by the

time the DOL promulgated the IFR"); *Regeneron Pharms., Inc. v. HHS*, No. 20-CV-10488 (KMK), 2020 WL 7778037, at *13 (S.D.N.Y. Dec. 30, 2020) (concluding that "the COVID-19 pandemic does not suffice to show good cause"); *Ass'n of Cmty. Cancer Ctrs. v. Azar*, No. CV CCB-20-3531, 2020 WL 7640818, at *2 (D. Md. Dec. 23, 2020) (rejecting reliance on "the economic consequences of the COVID-19 pandemic to justify dispensing with the required procedures"); *Itserve All., Inc. v. Scalia*, No. CV 20-14604 (SRC), 2020 WL 7074391, at *4 (D.N.J. Dec. 3, 2020) (rejecting argument "that the COVID-19 pandemic created an economic emergency"); *Chamber of Commerce of U.S. v. DHS*, No. 20-CV-07331-JSW, 2020 WL 7043877, at *11 (N.D. Cal. Dec. 1, 2020) (rejecting "Defendants' reliance on the COVID-19 pandemic to invoke the good cause exception").

## III. The Court Should Grant Expedited Summary Judgment to Plaintiffs.

In light of the CDC's extension of the Eviction Moratorium and the ongoing harm to the nation's landlords, Plaintiffs respectfully renew their request for an expedited ruling on the pending motions for summary judgment. ECF 6-1, at 40–41 (citing Fed. R. Civ. P. 57 ("The court may order a speedy hearing of a declaratory-judgment action.")). As Plaintiffs explained, landlords suffered $55–76 billion in economic harm from the first iteration of the Eviction Moratorium that expired December 31, 2020, and they will suffer $165–228 billion if the Eviction Moratorium continues through 2021. *Id.* at 6–7 (citing Declaration of Scholastica Cororaton ¶¶ 16–17).

Although Congress appropriated $25 billion in rental assistance, that appropriation is only a fraction of the amount that landlords need to cover their costs from the Eviction Moratorium. "A recent study by Moody's Analytics has found the amount needed for rental assistance through January 2021 is close to $60 billion, which means the funds allocated last month, while extremely helpful, fall short of the support that is potentially needed." *See* Letter from Charlie Oppler, 2021 President, National Association of REALTORS®, to United States Senate (Feb. 1, 2021), https://narfocus.com/billdatabase/clientfiles/172/2/4261.pdf. Now that the CDC has further

extended the Eviction Moratorium beyond the deadline Congress established in the Consolidated Appropriations Act, "[a]dditional funds are needed now to ensure that renters are able to satisfy their debt burdens and housing providers are able to fulfill their financial obligations, which includes maintaining safe properties for their tenants. Widespread extensions of eviction moratoria without such support will only exacerbate this crisis." *Id.*

The nation's landlords should no longer be forced to bear these economic burdens alone by mere agency fiat. HHS declared COVID-19 a public health emergency more than a year ago. *See* Alex M. Azar II, "Determination That A Public Health Emergency Exists," U.S Dep't of Health & Human Servs. (Jan. 31, 2020), https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx. A federal eviction moratorium has been in effect almost continuously since March 2020. *See* Pub. L. 116-136 § 4024; Pub. L. No. 116-260, § 502. The CDC's most recent extension of the Eviction Moratorium—with the prospect of more extensions in the future—is causing significant economic harm to the nation's landlords warranting expedited relief. *See* CDC, Media Statement from CDC Director Rochelle P. Walensky, MD, MPH, on Extending the Eviction Moratorium (Jan. 20, 2021) (announcing that "I will extend the current order temporarily halting residential evictions *until at least March 31, 2021*" (emphasis added)), https://www.cdc.gov/media/releases/2021/s0121-eviction-moratorium.html. Although Plaintiffs' counsel is ready to appear if the Court would find oral argument helpful, Plaintiffs do not request oral argument in the interest of an expedited ruling on the pending motions before the Eviction Moratorium may be extended again at the end of March 2021.

## CONCLUSION

For the forgoing reasons, and the reasons explained in Plaintiffs' prior briefs, the Court should deny Defendants' partial motion to dismiss and grant expedited summary judgment to Plaintiffs.

Dated: February 15, 2020

Respectfully submitted,

*s/ Brett A. Shumate*

Brett A. Shumate (D.C. Bar No. 974673)
Charlotte H. Taylor (D.C. Bar No. 1024658)
Megan Lacy Owen (D.C. Bar No. 1007688)
(*pro hac vice*)
Stephen J. Kenny (D.C. Bar No. 1027711)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 879-3939
Facsimile: (202) 626-1700

Autumn Hamit Patterson
(Texas Bar No. 24092947)
(*pro hac vice*)
JONES DAY
2727 N. Harwood St.
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2020, a true and correct copy of the foregoing was filed using the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

February 15, 2020

*s/ Brett A. Shumate*
Brett A. Shumate