**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ALABAMA ASSOCIATION OF REALTORS, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,

Defendants.

No. 20-cv-3377 (DLF)

**DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ..... 1

ADDITIONAL BACKGROUND ..... 2

ARGUMENT ..... 4

I. Plaintiffs' Statutory Authority, Arbitrary and Capricious, and Nondelegation Claims Should Be Dismissed in Light of Congress's Ratification of the CDC Order. ..... 4

II. The January Order Further Undermines the Merits of Plaintiffs' APA and RFA Claims. ..... 8

III. Plaintiffs Are Not Entitled to Summary Judgment—Expedited or Otherwise. ..... 11

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

## Cases

*Am. Fed. of Gov't Emps. v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, (*AFGE*), 133 F. Supp. 2d 75 (D.D.C. 2001) ....6

*Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*, --- F. Supp. 3d ---, No. 20-5193, 2020 WL 6700568 (C.D. Cal. Nov. 13, 2020)....12

*Ass'n of Cmty. Cancer Ctrs. v. Azar*, No. 20-3531, 2020 WL 7640818 (D. Md. Dec. 23, 2020) ....10

*Auracle Homes, LLC v. Lamont,* 478 F. Supp. 3d 199 (D. Conn. 2020) ....12

*Brown v. Azar*, No. 20-3702, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020)....*passim*

*Chambless Enters., LLC v. Redfield*, 2020 WL 7588849 (W.D. La. Dec. 22, 2020)....*passim*

*Commerce of U.S. v. DHS*, No. 20-7331, 2020 WL 7043877 (N.D. Cal. Dec. 1, 2020)....10

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)....11

*El Papel LLC v. Inslee*, No. 20-1323, 2020 WL 8024348 (W.D. Wash. Dec. 2, 2020), *report and recommendation adopted by* 2021 WL 71678 (W.D. Wash. Jan. 8, 2021)....12

*Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111 (1947)....5

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13 (D.C. Cir. 2006) ....6

*Heights Apts. LLC v. Walz*, --- F. Supp. 3d ----, 2020 WL 7828818 (D. Minn. Dec. 31, 2020) ....13

*Itserve All., Inc. v. Scalia*, No. 20-14604 (SRC), 2020 WL 7074391 (D.N.J. Dec. 3, 2020)....10

*Ivanhoe Irr. Dist. v. McCracken*, 357 U.S. 275 (1958)....5

*James v. Hodel*, 696 F. Supp. 699 (D.D.C. 1988)....7

*James v. Lujan*,
893 F.2d 1404 (D.C. Cir. 1990) ....................7

*KBW Inv. Props. LLC v. Azar*,
No. 20-4852 (S.D. Ohio Sept. 25, 2020) ....................11

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*,
785 F.3d 684 (D.C. Cir. 2015) ....................11

*Purdue Univ. v. Scalia*,
No. 20-3006, 2020 WL 7340156 (D.D.C. Dec. 14, 2020) ....................10

*Regeneron Pharms., Inc. v. HHS*,
No. 20-10488, 2020 WL 7778037 (S.D.N.Y. Dec. 30, 2020) ....................10

*Schism v. United States*,
316 F.3d 1259 (Fed. Cir. 2002) ....................6

*Sherley v. Sebelius*,
644 F.3d 388 (D.C. Cir. 2011) ....................11

*Thomas v. Network Sols., Inc.*,
176 F.3d 500 (D.C. Cir. 1999) .................... 5, 6

*Tiger Lily LLC v. U.S. Dep't of Housing & Urban Dev.*,
--- F. Supp. 3d ----, No. 20-2692, 2020 WL 7658126 (W.D. Tenn. Nov. 6, 2020) .................... 11, 12

**Statutes**

5 U.S.C. § 553(b)(B) ....................9

42 U.S.C. § 264 .................... 4, 5, 7

Consolidated Appropriations Act, 2021,
Pub. L. No. 116-260, div. N, tit. V, § 502, 134 Stat. 1182 (2020) ....................5

**Regulations**

Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID–19,
85 Fed. Reg. 55292 (September 4, 2020) .................... 5, 10

Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19,
86 Fed. Reg. 8020 (Feb. 3, 2021) ....................*passim*

## INTRODUCTION

By extending the Centers for Disease Control and Prevention's (CDC's) temporary eviction moratorium Order through January 2021, Congress ratified the agency's action, confirming that it fell within CDC's statutory authority, was not arbitrary or capricious, and did not violate the nondelegation doctrine. *See* Defs.' Reply Mem. in Supp. of Mot. for Summ. J. & Partial Mot. to Dismiss 2–3 (Defs.' Reply), ECF No. 32-1. Every federal court to have addressed these issues has reached the same conclusion. *See generally Chambless Enters., LLC v. Redfield*, No. 20-1455, 2020 WL 7588849 (W.D. La. Dec. 22, 2020), *appeal filed*, No. 21-30037 (5th Cir. Jan. 21, 2021); *Brown v. Azar*, No. 20-3702, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020), *appeal filed*, No. 20-14210 (11th Cir. Nov. 9, 2020), *mot. for inj. pending appeal denied*, No. 20-14210 (11th Cir. Dec. 17, 2020). Plaintiffs' arguments have thus been rejected by both Congress and the courts. And their contention that Congress was not sufficiently clear in ratifying the CDC Order is belied by the plain text of the Act extending the Order.

Moreover, CDC's further extension of the Order, until the end of March 2021, was supported by additional evidence showing that the pandemic had worsened significantly leading up to the extension, by scientific studies demonstrating that eviction moratoria work to slow the spread of COVID-19, and by data indicating that evictions would likely proceed quickly and in large numbers if the Order were lifted prematurely. This new information bolsters the conclusions that the Order complies with the requirements of the Administrative Procedure Act (APA) and Regulatory Flexibility Act (RFA), and shows that it is unquestionably in the public interest to maintain a temporary eviction moratorium that public health experts have confirmed mitigates the spread of a deadly disease in the midst of a far-reaching (and exceedingly rare) global pandemic. The Court should grant Defendants' partial motion to dismiss, grant summary judgment to Defendants on all other counts, and terminate this case.

**ADDITIONAL BACKGROUND**

The background to this action is set forth in Defendants' memorandum of points and authorities in support of their motion for summary judgment, *see* Defs.' Mem. in Supp. of Mot. for Summ. J. 2–8 (Defs.' Mem.), ECF No. 26, as supplemented by Defendants' combined reply memorandum in support of their motion for summary judgment and memorandum in support of their partial motion to dismiss, *see* Defs.' Reply 2–3. Since the filing of those briefs, on January 29, 2021, the CDC Director signed an Order extending and superseding the CDC Order at issue here. *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 8020 (Feb. 3, 2021) (the January Order). The January Order provides that it "is effective on January 31, 2021 and will remain in effect unless extended, modified, or rescinded, through March 31, 2021." *Id.* at 8025.

The January Order is identical in scope to, and incorporates much of the content of, the September Order, *id.* at 8021, but adds new evidence that provides additional support for the Director's conclusion that the Order is reasonably necessary to prevent the further spread of COVID-19. At the outset, the January Order documents the ongoing danger from and increased severity of the pandemic since the issuance of the September Order. For example, as of January 21, 2021, over 24.4 million cases COVID-19 cases, resulting in over 400,000 deaths, had been reported in the United States, with tens if not hundreds of thousands of new cases arising daily. *Id.* On a single day in January 2021 alone, over 300,000 COVID-19 cases were reported to CDC, representing a peak approximately seven times the highest daily cases in April 2020 and four times that in July 2020. *Id.* The number of deaths from COVID-19 in December 2020 and January 2021 consistently exceeded the number of deaths from any other cause. *Id.* Cases of COVID-19 have now been reported in every county in the continental United States. *Id.* And new variants of SARS-CoV-2, the virus that causes COVID-19, have emerged in recent months, some of which are more contagious than the original strain of the

virus. *Id.* These are among the additional reasons the CDC Director determined that "[t]he rapidly changing nature of the pandemic requires not only that CDC act swiftly, but also deftly to ensure its actions are commensurate with the threat." *Id.* at 8025.

In addition, the January Order includes "newly available modeling projections and observational data" comparing rates of COVID-19 in states that have implemented and lifted eviction moratoria, *id.* at 8021, which "indicate that evictions substantially contribute to COVID-19 transmission," *id.* at 8022. Specifically, preliminary mathematical models have found that lifting eviction moratoria led to a 40 percent increased risk of contracting COVID-19 among evicted persons and family or friends with whom they shared housing after eviction. *Id.* The same models predicted an increase in overall community transmission even among those who did not share housing when evictions occur. *Id.* Further, observational data comparing COVID-19 spread in states that lifted eviction moratoria with states that maintained eviction moratoria "showed significant increases in COVID-19 incidence and mortality approximately 2–3 months after eviction moratoria were lifted"—suggesting that, "nationally, over 433,000 cases of COVID-19 and over 10,000 deaths could be attributed to lifting state moratoria." *Id.*

Finally, the January Order cites data indicating that eviction filings are occurring during the Order's effective period, and thus that it is "expected that large numbers of evictions would be processed if the Order were to expire." *Id.* at 8025. And because evictions lead to increased COVID-19 spread, this information further supports the Director's conclusion that extending the temporary eviction moratorium was a "reasonably necessary measure . . . to prevent the further spread of COVID-19." *Id.* at 8024.

## ARGUMENT

### I. Plaintiffs' Statutory Authority, Arbitrary and Capricious, and Nondelegation Claims Should Be Dismissed in Light of Congress's Ratification of the CDC Order.

Defendants have demonstrated that Congress's ratification of the CDC Order requires dismissal of Counts I–V of Plaintiffs' complaint. *See* Defs.' Reply 7–9. Plaintiffs concede that Congress may ratify agency action through legislation, and they do not contest that Congress has the power to impose a temporary eviction moratorium. *See* Pls.' Opp. to Defs.' Partial Mot. to Dismiss 2–4 (Pls.' MTD Opp.), ECF No. 37. But they contend that Congress did not ratify the CDC Order in the 2021 Appropriations Act because the Act was not sufficiently clear. *See id.* This argument fails, as the Act unambiguously approves CDC's original action by extending it without change. But even if the 2021 Appropriations Act was not a technical ratification of the CDC Order, Congress's decision to extend the Order without providing additional authority to CDC itself proves that the Order was within CDC's existing statutory authority and otherwise reasonable in the first instance.

CDC originally issued the eviction moratorium Order pursuant to its authority under section 361 of the Public Health Service Act of 1944 (PHSA), which empowers the Secretary of Health and Human Services (HHS) "to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases" into the United States or among the states. 42 U.S.C. § 264(a). As Defendants have explained—and as multiple courts have confirmed—the plain statutory language provides CDC with the authority to issue such a temporary eviction moratorium where it is "necessary" in the "judgment" of public health officials for disease-prevention purposes. *See* Defs.' Mem. 9–11; Defs.' Reply 9–12; *accord Chambless*, 2020 WL 7588849, at *3–9; *Brown*, 2020 WL 6364310, at *6–10. Congress removed any doubt on this score by extending the Order "issued by [CDC] under section 361 of the [PHSA]" without providing new substantive authority for it, thus confirming that the statutory text means what it says. Consolidated

Appropriations Act, 2021, Pub. L. No. 116-260, div. N, tit. V, § 502, 134 Stat. 1182, 2079 (2020) (2021 Appropriations Act).

In doing so, Congress clearly ratified the CDC Order. The relevant portion of the 2021 Appropriations Act provides in full:

> The order issued by the Centers for Disease Control and Prevention under section 361 of the Public Health Service Act (42 U.S.C. 264), entitled "Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID–19" (85 Fed. Reg. 55292 (September 4, 2020) is extended through January 31, 2021, notwithstanding the effective dates specified in such Order.

*Id.* The Court need look no further than the explicit directive that the Order "is extended . . . notwithstanding the effective dates specified in such Order" to determine that Congress intended to ratify the CDC Order, fatally undermining Plaintiffs' statutory authority, arbitrary and capricious, and nondelegation claims. *See id.*

Plaintiffs' cases do not alter this conclusion. Although Congress has sometimes used the term "ratify" when endorsing agency action, Plaintiffs cite no case holding that any magic words are required for Congress to effect a ratification. To the contrary, the D.C. Circuit has previously rejected the argument that an otherwise-clear congressional ratification was invalid simply because the ratification provision did not include a specific term. *See Thomas v. Network Sols., Inc.*, 176 F.3d 500, 506–07 (D.C. Cir. 1999) ("[T]he argument against ratification proceeds on the basis that if Congress had wanted to confirm the assessment [it] would have said 'tax' rather than 'fee.' We think this difference . . . is inconsequential."). And the Supreme Court has held that Congress may ratify executive action through appropriations, underscoring that specific language is unnecessary. *See Ivanhoe Irr. Dist. v. McCracken*, 357 U.S. 275, 293 (1958) (holding that Congress's reauthorization of and appropriations for a project "constitute[d] ratification of administrative construction, and confirmation and approval of the contracts"); *Fleming v. Mohawk Wrecking & Lumber Co.*, 331 U.S. 111,

116 (1947) ("the appropriation by Congress of funds for the use of such agencies stands as confirmation and ratification of the action of the Chief Executive").

Moreover, in certain cases Plaintiffs cite, Congress's specific references to "ratification" were direct responses to court rulings that an agency lacked authority to take an action without the express approval of Congress. *See Thomas*, 176 F.3d at 506 (authorizing agency action ruled an illegal tax); *Am. Fed. of Gov't Emps. v. D.C. Fin. Resp. & Mgmt. Assistance Auth.* (*AFGE*), 133 F. Supp. 2d 75, 77 (D.D.C. 2001) (authorizing agency action ruled to be in excess of statutory authority). Such language was unnecessary here, as every federal court to have addressed the issue has held that the Order is within CDC's preexisting statutory authority. *See Chambless*, 2020 WL 7588849, at *3–9; *Brown*, 2020 WL 6364310, at *6–10. Congress confirmed these rulings by extending the Order without substantive change.

Plaintiffs' other cases stand for the irrelevant proposition that a general appropriation does not, without more, ratify an agency action not separately identified in the appropriations act at issue. *See, e.g.*, *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 n.7 (D.C. Cir. 2006) ("Because the appropriations here did not identify the Wild Horses and Burros Program as a line item, however, we hesitate to read too much into Congress's action."); *Schism v. United States*, 316 F.3d 1259, 1289–90 (Fed. Cir. 2002) ("ratification ordinarily cannot occur in the appropriations context unless the appropriations bill itself expressly allocates funds for a specific agency or activity"). These cases are inapposite here, where the relevant portion of the 2021 Appropriations Act expressly extends the CDC Order, and Congress's ratification of that Order is not based upon an appropriation.

But even assuming that the 2021 Appropriations Act were insufficiently explicit to ratify the CDC Order—which is not the case—the Act nonetheless confirms that the Order falls within CDC's statutory authority. As explained, that Congress chose to extend the Order without change, rather than enact new substantive authority for an eviction moratorium, demonstrates its recognition—

consistent with that of every federal court to have addressed the issue—that CDC's existing authority under the PHSA permitted the agency to implement a temporary eviction moratorium for disease-control purposes. *See* 42 U.S.C. § 264(a); *Chambless*, 2020 WL 7588849, at *3–9; *Brown*, 2020 WL 6364310, at *6–10. Congress's endorsement of the Order likewise confirms that it was not arbitrary or capricious. *See James v. Hodel*, 696 F. Supp. 699, 701 (D.D.C. 1988), *aff'd sub nom. James v. Lujan*, 893 F.2d 1404 (D.C. Cir. 1990) (per curiam); *see also Chambless*, 2020 WL 7588849, at *11–12; *Brown*, 2020 WL 6364310, at *14. And finally, Congress's plain directive to CDC to extend the Order cures any nondelegation issue that might have existed—though none did, *see* Defs.' Mem. 33–35; Defs.' Reply 15; *accord Chambless*, 2020 WL 7588849, at *10–11—as it is hard to imagine any clearer guidance than the 2021 Appropriations Act.

Although the Order remains in place today because of CDC's January Order extending it, each of those conclusions remains equally true—indeed, the pandemic only worsened in the month between Congress's ratification of the Order and CDC's further extension of it. *See* 86 Fed. Reg. at 8021. Moreover, the January Order is identical in substance and effect to the September Order ratified by Congress, save the addition of data reinforcing the Order's necessity. *See id.* at 8022. Congress's confirmation of CDC's authority to issue a temporary eviction moratorium under the PHSA, its recognition of the reasonableness of that Order, and its delegation of specific authority to CDC thus apply equally to the January Order.[1]

Moreover, Plaintiffs are incorrect that either the CARES Act or the 2021 Appropriations Act sub silentio limited CDC's ability to use its existing statutory authority to implement an eviction moratorium to prevent the spread of COVID-19, or that CDC "ignored" congressional intent in doing

[1] Plaintiffs' argument that CDC's disease-prevention authority is limited to quarantine, *see* Pls.' MTD Opp. 4, fails both because it is irreconcilable with Congress's extension of the Order and because it depends upon the faulty premise that the Order regulates "the interstate movement of persons," *id.*—which it does not, *see* Defs.' Mem. 17.

so. *See* Pls.' MTD Opp. 5. Instead, Congress signaled approval of CDC's action by extending the September Order, which was issued *after* the CARES Act eviction moratorium's expiration. *See id.* And in any event, neither the CARES Act nor the 2021 Appropriations Act in any way cabins CDC's authority under the PHSA. The 2021 Appropriations Act, in fact, endorses CDC's understanding of the scope of its authority. And it nowhere precludes further extension of the Order—despite the fact that Congress could have easily anticipated such an extension in light of the severity of the ongoing pandemic at the time. At bottom, because these Acts do not conflict with, and may be read harmoniously with, section 361 of the PHSA, canons of construction compel the conclusion that the former does not limit the latter. *See* Defs.' Mem. 17–18.

If Congress had any doubts about the legality of the September Order, it certainly could have created new statutory authority for a temporary eviction moratorium—as it did in the CARES Act. That Congress chose instead to extend the CDC Order (by overwhelming, bipartisan majority) shows that it found the original Order a lawful and reasonable exercise of CDC's existing authority.

## II. The January Order Further Undermines the Merits of Plaintiffs' APA and RFA Claims.

CDC's January Order further undermines Plaintiffs' APA and RFA claims, supplying additional evidence that (1) eviction moratoria slow the spread of COVID-19, and (2) if the Order were a rule, there would have been good cause for forgoing notice and comment.

*First*, contrary to Plaintiffs' contention that the public health experts at CDC acted arbitrarily, the January Order includes substantial new scientific modeling and observational evidence demonstrating that eviction moratoria work to slow the spread of COVID-19. *See generally* 86 Fed. Reg. at 8022. In particular, the January Order describes models in which "lifting eviction moratoria led to a 40% increased risk of contracting COVID-19 among people who were evicted and those with whom they shared housing after eviction." *Id.* It also cites observational data that "showed significant increases in COVID-19 incidence and mortality approximately 2–3 months after eviction moratoria

were lifted." *Id.* Those data suggest that "over 433,000 cases of COVID-19 and over 10,000 deaths could be attributed to lifting state moratoria." *Id.* This additional scientific support confirms that CDC reasonably found that a temporary eviction moratorium is an appropriate way to fight a once-in-a-century pandemic that has killed nearly half a million Americans.

*Second*, the January Order leaves no doubt that if it were a rule under the APA—and it is not, *see Chambless*, 2020 WL 7588849, at *11—there would have been good cause for forgoing notice and comment pursuant to 5 U.S.C. § 553(b)(B). *See Chambless*, 2020 WL 7588849, at *12 (rejecting contention "that the CDC could have started a rulemaking earlier, leaving time for a full notice-and-comment process," before issuing September Order). As CDC explained in the January Order, the conditions that justified forgoing notice and comment with respect to the September Order "continue to exist—indeed, have worsened," 86 Fed. Reg. at 8024; "[a]s of January 21, 2021, there have been over 24,400,000 cases and over 400,000 deaths," *id.* at 8025. CDC further noted that, "[t]hrough December 2020 and January 2021, the number of deaths per day from COVID–19 consistently exceeded any other cause," *id.* at 8021 (citation omitted), and that "in recent months, new variants of SARS-CoV–2 have emerged globally, some of which have been associated with increased transmissibility," *id.* (citation omitted).

Pointing to those serious conditions, as well as the fact that the congressional extension of the September Order was "set to expire on January 31, 2021," *id.* at 8024, CDC concluded that "immediate action is again necessary without prior notice and comment and without a delay in the effective date," explaining that the "rapidly changing nature of the pandemic requires not only that CDC act swiftly, but also deftly to ensure that its actions are commensurate with the threat," *id.* at 8025. Protecting the public health in the face of a novel, deadly, and highly contagious virus "necessarily involves assessing evolving conditions that inform CDC's determinations," *id.*, and CDC's justification for forgoing notice and comment "more than meets" the standard of 5 U.S.C. § 553(b)(B), *Chambless*, 2020 WL

7588849, at *11. And because Plaintiffs' RFA claim is duplicative of their notice-and-comment claim, *see* Defs.' Mem. 27, it fails for the same reasons.

To be sure, there are cases holding that the COVID-19 pandemic does not automatically excuse notice and comment for any rule. *See* Pls.' MTD Opp. 5–6. Yet none of Plaintiffs' cases addresses a public health order intended to save tens of thousands of lives by fighting the pandemic itself. Rather, three of them reject an attempt to address economic conditions that were worsened by the pandemic by imposing additional regulations on H1-B visas. *See Purdue Univ. v. Scalia*, No. 20-3006, 2020 WL 7340156, at *7 (D.D.C. Dec. 14, 2020) (noting that the asserted exigency was "widespread unemployment"); *Itserve All., Inc. v. Scalia*, No. 20-14604 (SRC), 2020 WL 7074391, at *5 (D.N.J. Dec. 3, 2020) ("Rather than pointing to any imminent threats to national security, public safety, or the environment, the Defendants here have asserted possible fiscal harm."); *Chamber of Commerce of U.S. v. DHS*, No. 20-7331, 2020 WL 7043877, at *9–11 (N.D. Cal. Dec. 1, 2020) (noting the mismatch between the skilled foreign workers regulated by the rule and the service employees disproportionately left unemployed by COVID-19). Plaintiffs' two other cases deal with a rule governing the prices of drugs that were "apparently . . . not intended to facilitate treatment of COVID-19." *Regeneron Pharms., Inc. v. HHS*, No. 20-10488, 2020 WL 7778037, at *10 (S.D.N.Y. Dec. 30, 2020); *see also Ass'n of Cmty. Cancer Ctrs. v. Azar*, No. 20-3531, 2020 WL 7640818, at *8 (D. Md. Dec. 23, 2020) (rule was intended to "alleviate general financial instability"). Those cases offer little guidance here, where public health experts have determined that emergency action is desperately needed to fight the pandemic itself. Thus, as in *Chambless*, the Court should credit CDC's finding that "'delay in the effective date of the Order . . . would defeat the purpose of the Order and endanger the public health.'" *Chambless*, 2020 WL 7588849, at *11 (quoting 85 Fed. Reg. at 55296).

## III. Plaintiffs Are Not Entitled to Summary Judgment—Expedited or Otherwise.

Finally, Plaintiffs are incorrect that their alleged economic injuries entitle them to summary judgment, expedited or otherwise. *See* Pls.' MTD Opp. 6–7. As an initial matter, Plaintiffs chose not to seek emergency relief, which would have enabled them to request an expedited hearing, *see* LCvR 65.1(d), but also would have required them to show irreparable injury, that the balance of the harms weighed in their favor, and that an injunction would be in the public interest, *see, e.g.*, *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). Plaintiffs have not attempted to make such a showing. Nor could they. *See generally Chambless*, 2020 WL 7588849 (denying motion for preliminary injunction of CDC Order); *Tiger Lily LLC v. U.S. Dep't of Housing & Urban Dev.*, --- F. Supp. 3d ----, No. 20-2692, 2020 WL 7658126 (W.D. Tenn. Nov. 6, 2020) (same); *Brown*, 2020 WL 6364310 (same); *see also* Order, *KBW Inv. Props. LLC v. Azar*, ECF No. 16, No. 20-4852 (S.D. Ohio Sept. 25, 2020) (denying motion for temporary restraining order).

Because Plaintiffs did not move for a preliminary injunction, their arguments about claimed economic harms are relevant, if at all, only to their request for a permanent injunction, as to which they are required to prove each of the following four factors: "(1) that [they] ha[ve] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Again, Plaintiffs have made no attempt to fulfill their burden, rendering their request for injunctive relief dead on arrival.

Two points bear emphasis, however. First, every federal court to have ruled on the question has determined that landlords challenging the CDC Order failed to show irreparable harm. *See Chambless*, 2020 WL 7588849, at *12–14; *Tiger Lily*, 2020 WL 7658126, at *8–10; *Brown*, 2020 WL

6364310, at *17–21; Order, *KBW Inv. Props.*, ECF No. 16, No. 20-4852. Second, numerous other federal courts have found that enjoining temporary eviction moratoria during a once-in-a-century global pandemic is contrary to the public interest, and that the balancing of the harms thus decisively tilts in favor of the government. *See, e.g.*, *Chambless*, 2020 WL 7588849, at *16; *El Papel LLC v. Inslee*, No. 20-1323, 2020 WL 8024348, at *14 (W.D. Wash. Dec. 2, 2020) ("[T]he Court concludes that being forced to leave one's residence facilitates the spread of COVID-19, impedes the ability of tenants to self-isolate, and undermines social distancing directives. These are overriding considerations that weigh in favor of the moratoria."), *report and recommendation adopted by* 2021 WL 71678 (W.D. Wash. Jan. 8, 2021); *Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*, --- F. Supp. 3d ---, No. 20-5193, 2020 WL 6700568, at *11 (C.D. Cal. Nov. 13, 2020) (unchecked evictions would "exacerbate a public health emergency that has already radically altered the daily life of every city resident, and even now threatens to overwhelm community resources"); *Brown*, 2020 WL 6364310, at *23 (concluding that any "economic harm pales in comparison to the significant loss of lives that Defendants have demonstrated could occur should the Court block the Order"); *Auracle Homes, LLC v. Lamont,* 478 F. Supp. 3d 199, 228 (D. Conn. 2020) ("given the nature of this pandemic, the balance of the equities and the public interest favor denying a preliminary injunction").

The January Order confirms that the balance of harms heavily favors Defendants here, and that enjoining the CDC Order would not serve the public interest. The severity of the pandemic only worsened between the passage of the 2021 Appropriations Act and the signing of the January Order. As the January Order points out, December 2020 and January 2021 were the worst months to date in terms of COVID-19 new cases and reported deaths. 86 Fed. Reg. at 8021. The virus has been detected in every county within the continental United States, and new, more contagious strains of the virus are spreading throughout the country. *Id.* Newly available scientific evidence has shown that evictions exacerbate the spread of COVID-19. *Id.* at 8022. And eviction actions continue to be filed during

the effective period of the Order, suggesting that if it were enjoined, a wave of evictions would likely result, risking further outbreaks of COVID-19. *Id.* at 8025.

At the same time, as Plaintiffs acknowledge, Congress has appropriated additional funds for emergency rental assistance, for which landlords may apply on behalf of their tenants, and which may be paid directly to landlords. *See* 2021 Appropriations Act, div. N, tit. V, §§ 501(c)(2), 501(f). Thus, now more than ever, Plaintiffs' alleged economic injuries "pale[] in comparison to the significant loss of life that that Defendants have demonstrated could occur should the Court block the Order." *See Brown*, 2020 WL 6364310, at *23.[2]

**CONCLUSION**

For the foregoing reasons, along with those set forth in Defendants' previous memoranda, the Court should dismiss Counts I–V of the Complaint, grant Defendants' motion for summary judgment on Counts VI–VIII, and terminate this case.

Dated: February 22, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ERIC BECKENHAUER
Assistant Director, Federal Programs Branch

*/s/ Leslie Cooper Vigen*
LESLIE COOPER VIGEN
Trial Attorney (DC Bar No. 1019782)
STEVEN A. MYERS
Senior Trial Counsel (NY Bar No. 4823043)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW

[2] In addition to the issues discussed above, Defendants respectfully notify the Court of an additional decision rejecting an access-to-courts claim to a state eviction moratorium, which was issued shortly before Defendants filed their reply memorandum in support of their motion for summary judgment. *See Heights Apts. LLC v. Walz*, --- F. Supp. 3d ----, 2020 WL 7828818, at *13-14 (D. Minn. Dec. 31, 2020), *appeal pending*, No. 21-1278 (8th Cir.).

Washington, DC 20005
Tel: (202) 305-0727
Fax: (202) 616-8470
E-mail: leslie.vigen@usdoj.gov

*Counsel for Defendants*