IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALABAMA ASSOCIATION OF REALTORS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> Defendants. | No. 20-cv-3377 (DLF) |

**DEFENDANTS' EMERGENCY MOTION FOR
STAY PENDING APPEAL AND IMMEDIATE ADMINISTRATIVE STAY**

Defendants respectfully seek an emergency stay pending appeal of the Court's order of May 5, 2021, which entered a nationwide vacatur of a temporary moratorium on certain residential evictions that the Centers for Disease Control and Prevention (CDC) extended through June 30, 2021, as a critical component of the country's ongoing fight against COVID-19. *See* ECF No. 53 (Order), ECF No. 54 (Mem. Op.). Defendants request that the Court enter an immediate administrative stay to avoid evictions while the government's stay motion is under consideration.

As explained below, the balance of equities overwhelmingly favors a stay. Every court to consider the question has held that landlords suffer no irreparable injury as a result of the moratorium. Indeed, Plaintiffs in this case have never attempted to claim irreparable injury stemming from the CDC Order, and Congress has appropriated $46 billion in emergency rental assistance that benefits landlords such as Plaintiffs. By contrast, undisputed scientific evidence shows that evictions exacerbate the spread of COVID-19, which has already killed more than half a million Americans, and the harm to the public that would result from unchecked evictions cannot be undone. The balance of the harms and the public interest thus overwhelmingly favor the government. Finally, although

Defendants recognize the Court has held otherwise, Defendants respectfully submit that they have a substantial likelihood of success on appeal, particularly in light of Congress's ratification of the CDC Order in the 2021 Consolidated Appropriations Act.

For those reasons, Defendants hereby move for an emergency stay pending appeal to prevent evictions that risk an increase in COVID-19 spread, while Defendants' appeal is under consideration. *See* Fed. R. Civ. P. 62(c). Defendants further request that the Court enter an immediate administrative stay while the Court considers this motion, and to allow the D.C. Circuit time to consider an emergency stay motion if this Court does not issue one. In the alternative, at a minimum, the Court should stay its order as to all parties but Plaintiffs—a stay that would cause Plaintiffs no prejudice while otherwise preserving the status quo as Defendants seek review in the D.C. Circuit.[1]

## ARGUMENT

In evaluating whether to grant a stay pending appeal, courts consider "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam). Where the federal government is a party, its interests and the public interest overlap. *See Nken v. Holder*, 556 U.S. 418, 420 (2009).

**I.     The Balance Of The Harms Overwhelmingly Warrants A Stay Pending Appeal.**

The Court should enter a stay pending appeal because the balance of the harms and related equitable considerations overwhelmingly favor maintenance of a public health measure that is saving thousands of lives in the midst of a deadly pandemic. Indeed, Plaintiffs have never claimed to suffer irreparable injury as a result of the moratorium, despite complying with it since September 2020. By

---

[1] Pursuant to Local Rule 7(m), counsel for Defendants conferred with counsel for Plaintiffs before filing this motion. Plaintiffs oppose the relief requested herein.

contrast, allowing immediate evictions across the nation will exacerbate the significant public health risks identified by CDC and recognized by Congress in its legislative extension of the moratorium. *See* 86 Fed. Reg. 16731, 16733 (2021) (research suggesting that 30-40 million people could be at risk of eviction absent state and local protections).

At the outset, every court to consider the question has held that the temporary eviction moratorium does not cause landlords irreparable harm. *See* Order, *KBW Inv. Props. LLC v. Azar*, ECF No. 16, No. 20-4852 (S.D. Ohio Sept. 25, 2020) (denying temporary restraining order); *Brown v. Azar*, No. 20-3702, --- F. Supp. 3d ----, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020) (denying preliminary injunction), *appeal filed*, No. 20-14210 (11th Cir. Nov. 9, 2020), *mot. for inj. pending appeal denied*, No. 20-14210 (11th Cir. Dec. 17, 2020); *Tiger Lily LLC v. U.S. Dep't of Hous. & Urb. Dev.*, No. 20-2692, --- F. Supp. 3d ----, 2020 WL 7658126 (W.D. Tenn. Nov. 6, 2020) (denying preliminary injunction); *Chambless Enters., LLC v. Redfield*, No. 20-1455, --- F. Supp. 3d ----, 2020 WL 7588849 (W.D. La. Dec. 22, 2020) (denying preliminary injunction), *appeal filed*, No. 21-30037 (5th Cir. Jan. 21, 2021); *Dixon Ventures, Inc. v. HHS*, No. 20-1518, 2021 WL 1604250 (E.D. Ark. Apr. 23, 3021) (denying preliminary injunction).[2] As these courts have recognized, the CDC Order does not excuse tenants' obligations to pay rent or to comply with other obligations of their leases, and it does not bar landlords from pursuing state court eviction proceedings as long as tenants are not physically removed while the

---

[2] No court has entered preliminary injunctive relief against the eviction moratorium, and two of the courts to deny preliminary relief specifically held that plaintiffs were unlikely to succeed on the merits of any claim that the moratorium is unlawful. *See Brown*, 2020 WL 6364310, at *6–17; *Chambless*, 2020 WL 7588849, at *3–12. Three other courts have entered final judgment declaring that the moratorium is unlawful, but those decisions addressed neither irreparable harm nor the public interest. *See Terkel v. CDC*, --- F. Supp. 3d ----, 2021 WL 742877 (E.D. Tex. 2021), *appeal pending*, No. 21-40137 (5th Cir.); *Skyworks, Ltd. v. CDC*, No. 20-2407, --- F. Supp. 3d ----, 2021 WL 911720 (N.D. Ohio Mar. 10, 2021); *Tiger Lily LLC v. U.S. Dep't of Hous. & Urb. Dev.*, --- F. Supp. 3d ----, 2021 WL 1171887 (W.D. Tenn. Mar. 15, 2021), *appeal pending*, No. 21-5256, *mot. for stay pending appeal denied*, --- F. 3d ----, 2021 WL 1165170 (6th Cir. Mar. 29, 2021). And none of those courts has purported to enter the nationwide relief that this Court has ordered here.

moratorium remains in place. A tenant's inability to remain current on rent in the midst of the economic upheaval wrought by the pandemic does not demonstrate that the tenant will be unable to pay the debt in the future. *See, e.g., Brown*, 2020 WL 6364310, at *19–20; *Chambless*, 2020 WL 7588849, at *14.

Indeed, as the *Brown* court anticipated, *id.* at *20, Congress has now appropriated more than $46 billion in emergency assistance for rent and rental arrears, *see* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. N, tit. V, § 501(c)(2) (2020); American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 3201(a)(1), (d)(1)(A)(i) (2021), much of which landlords are permitted to apply for and receive on tenants' behalves. These appropriations further undermine any assertion that the government's pandemic response will cause landlords irreparable harm. *Cf. St. Bernard Parish Gov't v. United States*, 887 F.3d 1354, 1363–64 (Fed. Cir. 2018) (causation analysis must take into account the benefits as well as the burdens that flow from related governmental actions). And in any case, monetary injury is "the antithesis of the irreparable harm needed to warrant a preliminary injunction." *Tiger Lily*, 2020 WL 7658126, at *8.

On the other hand, as federal courts have also consistently found, enjoining temporary eviction moratoria during a global pandemic is squarely contrary to the public interest. *See, e.g., Chambless*, 2020 WL 7588849, at *16; *El Papel LLC v. Inslee*, No. 20-1323, 2020 WL 8024348, at *14 (W.D. Wash. Dec. 2, 2020) (concluding that "being forced to leave one's residence facilitates the spread of COVID-19, impedes the ability of tenants to self-isolate, and undermines social distancing directives"—"overriding considerations that weigh in favor of the moratoria"), *report and recommendation adopted*, 2021 WL 71678 (W.D. Wash. Jan. 8, 2021); *Apartment Ass'n of Los Angeles Cty., Inc. v. City of Los Angeles*, No. 20-5193, --- F. Supp. 3d ----, 2020 WL 6700568, at *11 (C.D. Cal. Nov. 13, 2020), *appeal pending*, No. 20-56251 (9th Cir.) (lifting moratoria would "exacerbate a public health emergency that has already radically altered the daily life of every city resident, and even now threatens to overwhelm

community resources"); *Brown*, 2020 WL 6364310, at *22 ("undoing orders deemed necessary by public health officials and experts to contain a contagious and fast-spreading disease would result in comparatively more severe injury to the community"); *Auracle Homes, LLC v. Lamont,* 478 F. Supp. 3d 199, 228 (D. Conn. 2020) ("given the nature of this pandemic, the balance of the equities and the public interest favor denying a preliminary injunction"). Defendants are aware of no federal court that has held otherwise.

CDC's most recent extension of the order makes plain that the balance of harms continues to heavily favor the government, and that enjoining the CDC Order would not serve the public interest. The public health experts at CDC have found that the pandemic remains a significant threat, and the Order remains necessary to mitigate the further spread of COVID-19. As the March Order explains, at the time it was issued, "the current number of cases per day remain[ed] almost twice as high as the initial peak in April 2020 and transmission rates [were] similar to the second peak in July 2020." 86 Fed. Reg. 16731, 16732. As of the Order's signing, nearly 70 percent of counties in the United States were experiencing "high" or "substantial" transmission, and "no counties [were] currently considered free of spread." *Id.* at 16,733. Although COVID-19 vaccines are being distributed, CDC has found that maintaining COVID-19 precautions "remains critical" if the country is "to avoid further rises in transmission" and prevent "yet another increase in the rates of new infections." *Id.* CDC has also cautioned that new variants of the virus "show[] increased transmissibility as well as possible increased mortality." *Id.* The agency has found that these "substantial levels of transmission" and "the emergence of variants" show both "the persistent and dynamic nature of the pandemic," as well as "the continued need for protection." *Id.*; *see also* 86 Fed. Reg. 8020, 8021–22 (2021) (January extension) (describing mathematical modeling and observational data showing that eviction moratoria work to slow the spread of COVID-19). Indeed, as of the date of this filing, only thirty-two percent of the nation is fully vaccinated against COVID-19, and the country is still averaging more than 45,000 new

infections per day—more cases than were recorded in the initial, April 2020 peak. *See* CDC COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker (last visited May 5, 2021)

On the other hand, Plaintiffs' asserted economic interests, as demonstrated above, will not be irreparably harmed by the Order's temporary restrictions. But even if they would be, the public interest in protecting the health of the population outweighs even serious economic harm. *See, e.g.*, *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 129 (6th Cir. 2020) (finding that "[t]hough Plaintiffs bear the very real risk of losing their businesses, the Governor's interest in combatting COVID-19 is at least equally significant"); *TJM 64, Inc. v. Harris*, 475 F. Supp. 3d 828, 840 (W.D. Tenn. 2020) (denying injunction despite finding that plaintiffs would suffer "devastating economic injury" as a result of COVID-19 closure orders); *Tigges v. Northam*, 473 F. Supp. 3d 559, 573 (E.D. Va. 2020) (although plaintiff "suffered significant economic hardship due to the COVID-19 pandemic," economic loss did not outweigh the "urgent need to act to protect . . . health and safety"). In sum, Plaintiff's alleged economic injuries "pale[] in comparison to the significant loss of life that that Defendants have demonstrated could occur should the Court block the Order." *See Brown*, 2020 WL 6364310, at *23.

## II.    The Government Is Likely To Succeed On The Merits.

Before CDC issued the order extending the temporary eviction moratorium through June 30, 2021, Congress itself extended the effective date of the order issued by the CDC "under section 361 of the Public Health Service Act (42 U.S.C. § 264)," through January 31, 2021. Pub. L. No. 116-260, § 502, 134 Stat. at 2078–79. Defendants recognize that this Court determined that Congress did not thereby ratify the moratorium as an exercise of the CDC's authority under § 264, and that this Court concluded that the moratorium is "unambiguously foreclosed by the plain language of" § 264. Mem. Op. 19. As the Court is aware, however, other district courts have disagreed and concluded that the government is likely to succeed on the merits. Thus, notwithstanding this Court's rejection of

Defendants' position, the Court should stay its order in recognition of the significant possibility that the D.C. Circuit may see the issues differently, as other federal courts have done. *See, e.g.*, *Al-Adahi v. Obama*, 672 F. Supp. 2d 81, 83 (D.D.C. 2009) ("While the Court believes that the Memorandum Opinion speaks for itself in terms of how the case should be decided, it is true that it deals with complicated issues that represent fair ground for litigation and thus for more deliberative investigation. Therefore, the Government prevails on the first factor." (internal quotation marks and citation omitted)).

By extending the CDC Order issued "under section 361 of the Public Health Service Act (42 U.S.C. 264)," Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. N, tit. V, § 502, 134 Stat. 1182, 2079 (2020), Congress approved the temporary eviction moratorium as an exercise of the cited statutory authority. Congress did not simply extend the eviction moratorium for a month; Congress ratified, in express statutory text, the CDC's authority to issue the eviction moratorium under § 264. Indeed, Congress's extension of the order's effective date would have been a nullity if the CDC had lacked the authority to issue the order in the first place. And Congress relied on the moratorium in enacting massive appropriations to pay rent and rental arrears, recognizing that the moratorium would "help ensure that millions of renters across America are not evicted while waiting to receive assistance." U.S. H. Comm. on Fin. Servs., *COVID-19 Stimulus Package: Temporary Extension of the CDC Eviction Moratorium & Emergency Rental Assistance*, https://go.usa.gov/xss3y (last visited May 5, 2021).

In any case, Congress's acquiescence in CDC's exercise of its statutory authority was consistent with the plain language of the Public Health Service Act (PHSA). The PHSA authorizes the CDC Director to make and enforce such regulations "as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases . . . from one State or possession into any other State or possession." 42 U.S.C. § 264(a). The second sentence of § 264(a) does not implicitly

limit this broad grant of authority so as to preclude the issuance of a temporary eviction moratorium. That sentence includes a list of measures the Secretary "may provide for" "[f]or purposes of carrying out and enforcing . . . regulations" promulgated under the first sentence, such as "inspection, fumigation, disinfection, sanitation, pest extermination, destruction of [infected or contaminated] animals or articles . . . , and other measures, as in his judgment may be necessary." 42 U.S.C. § 264(a). That list is not exhaustive, as is clear from its own terms, as well as other subsections of § 264 itself, which expressly contemplate other exercises of authority. *Accord Brown*, 2020 WL 6364310, at \*8; *Chambless*, 2020 WL 7588849, at \*5; *Independent Turtle Farmers of La., Inc. v. United States*, 703 F. Supp. 2d 604, 619–20 (W.D. La. 2010).

The canon of constitutional avoidance does not counsel otherwise, *contra* Mem. Op. 14. "Only twice in this country's history" (and only in 1935) has the Supreme Court "found a delegation excessive—in each case because 'Congress had failed to articulate *any* policy or standard' to confine discretion." *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (plurality opinion) (quoting *Mistretta v. United States*, 488 U.S. 361, 373 n.7 (1989), and citing *A. L. A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 1570 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935)). "By contrast," the Supreme Court has "over and over upheld even very broad delegations." *Id.* at 2129. Here, section 264(a) provides the requisite "intelligible principle" to which the agency must conform by permitting only measures aimed at preventing the introduction, transmission, or spread of communicable disease from State to State or from foreign countries into the United States. *Mistretta*, 488 U.S. at 372. And federal regulation of rental transactions to prevent and interstate epidemic plainly falls within Congress's authority to regulate interstate commerce. *See, e.g.*, *Jones v. United States*, 529 U.S. 848, 856 (2000); *United States v. Comstock*, 560 U.S. 126, 134–35, 148 (2010).

At a minimum, the Court should stay its order insofar as it grants relief to non-parties. As Defendants have explained, traditional principles of equity and Article III jurisdiction require limiting

relief to the Plaintiffs, *see* Defs.' MSJ, ECF No. 26, at 44–45, and it is axiomatic that "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed. 2011)).  At the same time, Plaintiffs would suffer no prejudice if this Court maintained its order as to them but stayed it as to all other parties.  Therefore, even if the Court does not stay its order in its entirety, the Court should stay the order as to all regulated persons other than Plaintiffs who brought suit here.

## CONCLUSION

Defendants respectfully request that the Court stay its order pending appeal and enter an immediate administrative stay while this motion is under consideration.  In the alternative, the Court should enter such a stay as to all regulated persons other than Plaintiffs.

Dated:  May 5, 2021

    Respectfully submitted,

    BRIAN M. BOYNTON
    Acting Assistant Attorney General

    ERIC BECKENHAUER
    Assistant Director, Federal Programs Branch

    */s/ Steven A. Myers*
    STEVEN A. MYERS
    Senior Trial Counsel (NY Bar No. 4823043)
    LESLIE COOPER VIGEN
    Trial Attorney (DC Bar No. 1019782)
    United States Department of Justice
    Civil Division, Federal Programs Branch
    1100 L Street, NW
    Washington, DC 20005
    Tel:  (202) 305-0727
    Fax:  (202) 616-8470
    E-mail:  steven.a.myers@usdoj.gov

    *Counsel for Defendant*