IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALABAMA ASSOCIATION OF REALTORS®, *et al.*,<br><br>*Plaintiffs,*<br>v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>*Defendants.* | No. 1:20-cv-03377-DLF |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR A STAY PENDING APPEAL AND IMMEDIATE ADMINISTRATIVE STAY**

In seeking a stay, the government asks the Court not only to prolong unlawful agency action, but also to create a conflict with the Sixth Circuit's decision denying the same relief. *Tiger Lily, LLC v. HUD*, 992 F.3d 518 (6th Cir. 2021). This Court should decline the invitation.

To start, when the government is unlikely to succeed on the merits, a stay pending appeal must be denied. *Id.* at 524; *CREW v. FEC*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam). That is the case here, a fact starkly underscored by the government's decision to hide its discussion of the merits in the last few pages of its motion. This Court was undoubtedly correct in holding that "the Public Health Service Act, 42 U.S.C. § 264(a), unambiguously forecloses the nationwide eviction moratorium." ECF 54, Op. 19-20. The Sixth Circuit and three other courts have reached the same or similar conclusions about the limits on the CDC's authority to ban evictions, and the government's stay motion offers no compelling reason to think the D.C. Circuit (or the Supreme Court) would disagree. *Tiger Lily*, 992 F.3d at 524; *Tiger Lily, LLC v. HUD*, No. 2:20-cv-2692, 2021 WL 1171887, at *4 (W.D. Tenn. Mar. 15, 2021), *appeal filed*, No. 21-5256 (6th Cir. 2021); *Skyworks, Ltd. v. CDC*, No. 5:20-cv-2407, 2021 WL 911720, at *12 (N.D. Ohio Mar. 10, 2021); *Terkel v. CDC*, No. 6:20-cv-564, 2021 WL 742877, at *1-2, 10-11 (E.D. Tex. Feb. 25, 2021), *appeal filed*, No. 21-40137 (5th Cir. 2021).

The government's motion should also be denied because it makes no attempt to carry its burden to establish irreparable harm absent a stay. Instead, the government tries to shift that burden to Plaintiffs, who have already succeeded in obtaining a final judgment. Yet it is the government's extraordinary request that seeks an "intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation omitted). The government—not Plaintiffs—must demonstrate irreparable harm in order to obtain a stay of a final judgment pending appeal, and the government has utterly failed to carry this burden.

The remaining equitable factors likewise cut against a stay. When it comes to the balance of the equities, the economic harms are in equipoise. Although many renters have been financially struggling during the pandemic, so too have the nation's property owners. But the eviction moratorium shifts the pandemic's economic burdens from one group to another by administrative fiat, without legislative process. The public-health situation, moreover, is far different today than it was in March 2020 or even September 2020. States are reopening, COVID-19 infections and hospitalizations are dropping, vaccinations are on the rise, and most state eviction moratoria have expired or will expire by the end of this month.[1] Even CDC Director Walensky has expressed that our country is "turning the corner."[2] Thus, the continuing public-health need for a nationwide eviction moratorium is far weaker now than it was when the pandemic began and when the CDC first issued the eviction moratorium. And even if that point were debatable, the same could not be said for the lack of any "public interest in the perpetuation of unlawful agency action." *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021) (brackets and citation omitted).

---

[1] *See* National Association of Realtors®, *COVID-19 Industry Impact Watch: Real Estate* 6-8 (May 6, 2021), https://realtorparty.realtor/wp-content/uploads/dlm_uploads/2021/05/NAR-IIW-05.06.2021_Final.pdf.

[2] *See* Anne Flaherty, *'The Worst Is Behind Us': COVID Virus Ebbs, Lending Hope To A Nation Lashed By Disease*, ABC (Apr. 30, 2021), https://abcnews.go.com/Politics/worst-us-covid-virus-ebbs-lending-hope-nation/story?id=77419441.

Finally, this Court should reject the government's alternative bid to stay the vacatur to all regulated parties other than Plaintiffs. D.C. Circuit precedent forecloses that request, *National Mining Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); the Supreme Court recently affirmed a nationwide vacatur from this Court while distinguishing that remedy from nationwide injunctions, *DHS v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1916 n.7 (2020); and the government still has not cited a single case from either this Court or the D.C. Circuit holding that unlawful agency action must remain in effect for some regulated persons but not others.

## ARGUMENT

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433 (citation omitted). Instead, the applicant seeking this extraordinary relief "bears the burden of showing" that the traditional stay factors "justify an exercise" of this discretionary judicial power— namely, (1) that "the applicant has made a strong showing that he is likely to succeed on the merits"; (2) that "the applicant will be irreparably injured absent a stay"; (3) that a stay will not "substantially injure the other parties interested in the proceeding"; and (4) that "the public interest" favors a stay. *Id.* at 434 (internal quotation marks and citation omitted). "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest," and those "factors merge when the Government is the opposing party" (not the applicant for a stay). *Id.* at 435. Here, the government has not carried its burden with respect to any of the stay factors, much less all four of them.

**I.      The Government Is Unlikely To Succeed On The Merits.**

Although the government must establish a likelihood of success on the merits to obtain a stay, its motion treats this "critical" factor as an afterthought. *Nken*, 556 U.S. at 434; *see, e.g.*, *Tiger Lily*, 992 F.3d at 524 ("Given that the government is unlikely to succeed on the merits, we need not consider the remaining stay factors."); *CREW*, 904 F.3d at 1019 (noting that the fact that an "appeal shows

little prospect of success" is "an arguably fatal flaw for a stay application"). Although this Court has already explained in detail why the CDC unambiguously lacks authority to adopt the nationwide eviction moratorium, *see* ECF 54, Op. 7-19, the government asks the Court to second-guess its final judgment principally on the ground that a few other district courts saw matters differently at the preliminary-injunction stage, *see* Mot. 6-7. But gesturing at a conflict in district-court authority is no substitute for establishing a likelihood of success on appeal, especially when the only appellate court to have addressed the issue here—the Sixth Circuit—has unanimously agreed with this Court's analysis in a published opinion. *Tiger Lily*, 992 F.3d at 522-24. The government barely even acknowledges the Sixth Circuit's decision, *see* Mot. 3 n.2, much less grapples with its analysis. Nor does it offer a compelling basis for its prediction that the D.C. Circuit will create a circuit split, *see* Mot. 7, or that the Supreme Court would ultimately resolve such a conflict in the government's favor.

When it comes to substance, the government leads with a rehash of a ratification argument this Court already rejected. *Compare* ECF 54, Op. 17-19 *with* Mot. 7. As the Court correctly concluded, nothing in Congress's extension of the CDC's moratorium through January 31, 2021, expressly approved the CDC's authority to issue the original moratorium, let alone authorized the agency to prolong that order well past Congress's deliberate cut-off date. Far from being premised on the CDC's "authority to issue the order in the first place," Mot. 7, that legislative extension at best "g[a]ve the force of law to official action unauthorized when taken"—but only until January 31. *Swayne & Hoyt v. United States*, 300 U.S. 297, 302 (1937). "After that date, Congress withdrew its support, and the CDC could rely only on the plain text of 42 U.S.C. § 264." *Tiger Lily*, 992 F.3d at 524.

And when it comes to Section 361, the government again offers no reason for this Court to revisit its earlier conclusions. *See* ECF 54, Op. 7-17. The observation that Section 361(a)'s list of measures "is not exhaustive," Mot. 8; *accord* ECF 54, Op. 11, in no way answers whether *this* measure

4

is authorized. And the government has not identified anything in Section 361 that empowers the CDC to adopt a nationwide eviction moratorium with the clarity required under the major-questions doctrine, ECF 54, Op. 14-16; the canon of constitutional avoidance, *id.* at 14;[3] or the federalism clear-statement rule, *Tiger Lily*, 992 F.3d at 523. Indeed, when Congress wants to get into the business of regulating landlord-tenant relationships on a billion-dollar scale, it knows how to do so unequivocally, as the eviction moratoria in the CARES Act and Consolidated Appropriations Act reveal. Nothing in Section 361 contains a similarly clear delegation of that power to the CDC. Rather, that statutory provision specifically addresses only inspection and quarantine measures. *See* ECF 54, Op. 13-14, 16-17. Ultimately, the government is left to rest on its "broad" view of the CDC's authority under Section 361, an authority that, according to the government, apparently has no limiting principle other than that any imaginable measure—whether it be nationwide lockdowns, worship limits, or vaccine mandates—"be aimed at" preventing interstate or international transmission of disease. Mot. 8. That sweeping assumption of power cannot be squared with fundamental principles of our constitutional system or statutory interpretation.

## II. The Government Has Not Shown That The Equities Support A Stay.

Although the government's failure to show a likelihood of success on the merits is reason alone to deny a stay, it comes up short with respect to the three equitable factors as well.

To start, the government does not even attempt to prove that it will suffer irreparable injury in the absence of a stay. Instead, it tries to shift its burden to Plaintiffs, faulting them for "never" having "claimed to suffer irreparable injury as a result of the moratorium," Mot. 2—without mentioning that Plaintiffs had no occasion to do so given their decision not to seek a preliminary

---

[3] While the government notes that the Supreme Court has not held a statute invalid under the nondelegation doctrine since 1935, Mot. 8, that Court has since then applied the doctrine by "giving narrow constructions to statutory delegations that might otherwise be thought to be unconstitutional," just as this Court did here. *Mistretta v. United States*, 488 U.S. 361, 373 n.7 (1989) (collecting cases).

injunction.  But it is the government's burden to establish its own irreparable harm from the lack of a stay, *Nken*, 556 U.S. at 434, and it has made no effort to do so here.  That alone is sufficient to dispose of its motion, even without a consideration of the merits.  *See, e.g.*, *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317 (1983) (Blackmun, J., in chambers) ("An applicant's likelihood of success on the merits need not be considered, however, if the applicant fails to show irreparable injury from the denial of the stay."); *National Postal Council v. Postal Regul. Comm'n*, No. 17-1276, 2021 WL 1044417, at *1 (D.C. Cir. Mar. 1, 2021) (per curiam) (denying stay motion solely because the applicant "has not demonstrated the type of imminent and irreparable harm necessary for a stay"); *CREW*, 904 F.3d at 1019 (explaining that "showing irreparable harm to [an applicant's] legal interests" is the "second 'critical' factor" for a stay) (quoting *Nken*, 556 U.S. at 434); *Doe 1 v. Trump*, No. 17-5267, 2017 WL 6553389, at *2 (D.C. Cir. Dec. 22, 2017) (denying governmental appellants' stay motion because they "failed to demonstrate that" an injunction "will cause them irreparable harm"); *Steele v. United States*, 287 F. Supp. 3d 1, 6 (D.D.C. 2017) (declining to issue a stay in part because the government had not "established a likelihood of irreparable injury").

Try as it might, the government cannot compensate for this defect by focusing on the harms to Plaintiffs and the public, *see* Mot. 2-6, for "the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest" only "[o]nce an applicant satisfies the first two factors," which are "the most critical," *Nken*, 556 U.S. at 434-35.  In any event, the government's lengthy argument concerning the final two stay factors fails on its own terms.  The balance of economic harms here is in equipoise, as the pandemic has placed financial burdens on renters and landlords alike.  The government has recognized as much, emphasizing that "[c]ountless middleclass landlords who rely on rental income to support their families have also faced deep financial distress

[due] to the COVID-19 crisis."[4]  The eviction moratorium simply shifted those burdens from one group to another; a stay would keep them there.  *See* ECF 6-2, Fordham Decl. ¶ 17; ECF 6-3, Gilstrap Decl. ¶ 12; ECF 6-4, Cororaton Decl. ¶ 12.  And as this Court has recognized, the "economic impact" of that wealth transfer is a "substantial" one.  ECF 54, Op. 15 n.4.  Landlords continue to lose between $13.8 and $19 billion each month in unpaid rent due to the eviction moratorium, and the cumulative impact of the CDC's order over the course of a year will be close to $200 billion.  ECF 6-4, Cororaton Decl. ¶¶ 15, 17.  Many of the millions of landlords affected by the moratorium are small business owners, some of whom have not collected rent from some tenants in more than a year.  *See* ECF 6-3, Gilstrap Decl. ¶ 7.  A stay pending appeal will only prolong and magnify those injuries—all inflicted without legislative approval.  *See supra* Pt. I.

Moreover, even if Plaintiffs were required to show irreparable harm to oppose the stay—and they are not—their significant economic harms are unrecoverable (and hence irreparable) in light of the government's sovereign immunity.  *See, e.g.*, *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) ("Economic harm … is irreparable here because [plaintiffs] will not be able to recover monetary damages connected to the IFRs."); *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 770-71 (10th Cir. 2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury."); *see also Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part and concurring in the judgment) (explaining that "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs"); *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 58 (D.D.C. 2020) (Boasberg, J.) (collecting cases).  That remains true notwithstanding the government's speculation that property

---

[4] U.S. Dep't of the Treasury, *Emergency Rental Assistance Fact Sheet* 1 (May 7, 2021), https://home.treasury.gov/system/files/136/FACT_SHEET-Emergency-Rental-Assistance-Program_May2021.pdf

7

owners may eventually be able to collect withheld rent from delinquent tenants or obtain rental assistance from Congress. *See* Mot. 3-4. Any tenants protected by the CDC's moratorium will have to swear under oath that they are essentially judgment-proof, and Congress's recent rental-assistance measures have been marred by delays and rollout problems.[5] Indeed, neither Mr. Fordham nor Mr. Gilstrap has received any federal rental assistance to mitigate their losses, and there is no good reason to think any meaningful assistance for unpaid rent is imminent.

With the economic harms in equipoise, the government's case on the equities reduces to its assertion that the eviction moratorium remains necessary to combat the spread of COVID-19. *See* Mot. 4-6. But whatever force that claim may have had during the height of the pandemic, *see id.* (collecting authorities from 2020), it is unpersuasive in May 2021. Today, hospitalizations and new cases are down dramatically; over half of the country's adult population has received at least one dose of the vaccine, including more than 80 percent of seniors; and the CDC's Director has commented that the United States is "turning the corner."[6] Consistent with this state of affairs, the majority of eviction moratoria adopted by the States have expired or will do so by the end of this month.[7] And to the extent public-health concerns resurface or persist in certain areas, the Court's judgment does not prevent States from reinstating or extending their eviction moratoria, as New York recently did.[8]

---

[5] *See* Andrew Ackerman & Will Parker, *Millions of Tenants Fall Further Behind On Rent As They Await Federal Covid-19 Assistance*, WALL ST. J. (Mar. 1, 2021), https://www.wsj.com/articles/millions-of-tenants-fall-further-behind-on-rent-as-they-await-federal-covid-19-assistance-11614594602; Yuliya Panfil & Elizabeth Garlow, *The Government Is Helping People Pay Rent, But Something's Gone Wrong*, SLATE (Apr. 8, 2021), https://slate.com/business/2021/04/rent-relief-pandemic-slowed-down-how-to-fix.html.

[6] *See* CDC, *Prevalent Hospitalizations Of Patients With Confirmed COVID-19*, https://covid.cdc.gov/covid-data-tracker/#hospitalizations (last visited May 6, 2021); CDC, *Trends In Number Of COVID-19 Cases And Deaths In The US Reported To CDC*, https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (last visited May 6, 2021); CDC, *COVID-19 Vaccinations In The United States*, https://covid.cdc.gov/covid-data-tracker/#vaccinations (last visited May 6, 2021); Flaherty, *supra*.

[7] *See supra* note 1.

[8] *See* Matthew Haag, *New York Extends Its Eviction Moratorium Through August*, N.Y. TIMES (May 4, 2021), https://www.nytimes.com/2021/05/04/nyregion/new-york-city-eviction-moratorium.html.

In all events, the government's failure to show a likelihood of success on the merits renders its discussion of the public interest irrelevant, as "there is generally no public interest in the perpetuation of unlawful agency action." *Shawnee Tribe*, 984 F.3d at 102 (brackets and citation omitted).

### III.  The Government Has Not Shown That Vacatur Must Be Limited To Plaintiffs.

Finally, the government's fallback request—a stay of the vacatur as to "all regulated persons other than Plaintiffs," Mot. 9—cannot be squared with binding precedent.  Consistent with the APA's directive that a court must "set aside" unlawful "agency action," 5 U.S.C. § 706(2), the D.C. Circuit has repeatedly "made clear that 'when a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.'"  *National Mining*, 145 F.3d at 1409 (brackets and citation omitted).

The Supreme Court apparently agrees.  In *Regents*, it explained that its affirmance of this Court's "order vacating" unlawful agency action made it "unnecessary to examine the propriety of the nationwide scope of the injunctions" entered by other district courts.  140 S. Ct. at 1916 n.7; *see NAACP v. Trump*, 298 F. Supp. 3d 209, 243 (D.D.C.) (rejecting "the government's invitation to confine its grant of relief strictly to the plaintiffs in this action"), *adhered to on denial of reconsideration*, 315 F. Supp. 3d 457, 474 n.13 (D.D.C. 2018) (explaining that the "debate" over "nationwide injunctions" was "not implicated" because the Court was "vacating an agency action pursuant to the APA").  And the *Regents* majority's distinction between nationwide vacaturs and nationwide injunctions drew no criticism from the four dissenters, including those who had not been shy about criticizing nationwide injunctions.  *See, e.g.*, *DHS v. New York*, 140 S. Ct. 599, 599-601 (2020) (Gorsuch, J., concurring in grant of stay); *Trump v. Hawaii*, 138 S. Ct. 2392, 2424-29 (2018) (Thomas, J., concurring).  So while the government may believe that constitutional and equitable principles require a partial stay of the vacatur, *see* Mot. 8-9, text and precedent compel otherwise.  And because the

9

government cannot show a likelihood of success on the merits with respect to nationwide vacatur, its assertion that a limited stay would not injure Plaintiffs is irrelevant.  *See* Mot. 9.

## CONCLUSION

The Court should deny the government's stay motion and vacate the temporary administrative stay.  At a minimum, the Court should extend its temporary administrative stay for no more than seven days after denying the stay to provide the D.C. Circuit with an opportunity to consider the government's motion.

Dated: May 7, 2021

Respectfully submitted,

*s/ Brett A. Shumate*
Brett A. Shumate (D.C. Bar No. 974673)
Charlotte H. Taylor (D.C. Bar No. 1024658)
Megan Lacy Owen (D.C. Bar No. 1007688)
   (*pro hac vice*)
Stephen J. Kenny (D.C. Bar No. 1027711)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700

Autumn Hamit Patterson
   (Texas Bar No. 24092947)
   (*pro hac vice*)
JONES DAY
2727 N. Harwood St.
Dallas, Texas 75201
Telephone:  (214) 220-3939
Facsimile: (214) 969-5100

*Counsel for Plaintiffs*