IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALABAMA ASSOCIATION OF REALTORS, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*,<br><br>    Defendants. | No. 20-cv-3377 (DLF) |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION FOR STAY PENDING APPEAL**

Defendants seek a stay pending appeal because the government is likely to prevail on appeal in a circumstance in which the balance of harms tilts decidedly in favor of maintaining the status quo. In opposition, Plaintiffs repeatedly emphasize that this Court has ruled for them on the merits. For the reasons set out in the government's D.C. Circuit stay motion, Defendants respectfully submit that this Court's decision was incorrect. *See* Defs.' Emergency Mot. for Stay Pending Appeal & Immediate Admin. Stay, *Ala. Ass'n of Realtors v. HHS*, No. 21-5093 (D.C. Cir. May 7, 2021) (presenting Defendants' merits arguments in detail). But to obtain a stay, Defendants need not convince this Court that its own ruling was error; if that were the standard, district courts would never stay their own rulings. Rather, in assessing the appropriateness of a stay, courts apply a multifactor test.

Here, while there is disagreement among courts on the merits, there is no disagreement as to the other factors that govern Defendants' request for a stay. As five federal district courts across four circuits have uniformly concluded, the eviction moratorium does not cause landlords irreparable harm. *See* Order, *KBW Inv. Props. LLC v. Azar*, ECF No. 16, No. 20-4852 (S.D. Ohio Sept. 25, 2020); *Brown v. Azar*, No. 20-3702, --- F. Supp. 3d ----, 2020 WL 6364310 (N.D. Ga. Oct. 29, 2020), *appeal filed*, No.

20-14210 (11th Cir.), *mot. for inj. pending appeal denied*, No. 20-14210 (11th Cir. Dec. 17, 2020); *Tiger Lily LLC v. U.S. Dep't of Hous. & Urban Dev.*, No. 20-2692, --- F. Supp. 3d ----, 2020 WL 7658126 (W.D. Tenn. Nov. 6, 2020); *Chambless Enters., LLC v. Redfield*, No. 20-1455, --- F. Supp. 3d ---, 2020 WL 7588849 (W.D. La. Dec. 22, 2020), *appeal filed*, No. 21-30037 (5th Cir.); *Dixon Ventures, Inc. v. HHS*, No. 20-1518, 2021 WL 1604250 (E.D. Ark. Apr. 23, 2021). Courts have also consistently found that the public interest favors maintenance of public health orders that are critical to fighting the worst pandemic in a century, *see, e.g.*, *Chambless*, 2020 WL 7588849, at *15-16; *El Papel LLC v. Inslee*, No. 20-1323, 2020 WL 8024348, at *14 (W.D. Wash. Dec. 2, 2020), *report and recommendation adopted*, 2021 WL 71678 (W.D. Wash. Jan. 8, 2021), even if such orders do cause economic harms, *see, e.g.*, *Brown*, 2020 WL 6364310, at *23.

Put simply, the harm that would flow from evictions and the concomitant spread of COVID-19 dwarfs a landlord's temporary—and recoverable—economic loss. A landlord's claim of irreparable harm is especially weak now that Congress has provided more than $46 billion designed to reach landlords whose tenants have fallen behind in rent. The Court should therefore stay its order to ensure that the D.C. Circuit has a meaningful opportunity to review this case before evictions commence. Plaintiffs themselves recognize that at a minimum the Court may extend its administrative stay for an additional week to ensure that the D.C. Circuit has sufficient time to consider Defendants' stay motion filed in that Court. *See* Pls.' Opp. to Defs.' Mot. for Stay, ECF No. 58 (Opp.) at 10.

## ARGUMENT

### I. The Balance Of The Harms Overwhelmingly Warrants A Stay Pending Appeal.

In suggesting that this Court deny a stay pending appeal, Plaintiffs are asking the Court to make a finding that every federal court to consider the issue has rejected: that economic harm to landlords resulting from a temporary delay in evicting tenants outweighs the harm of increased spread

2

of COVID-19.[1]  Courts have rejected that contention for good reason:  landlords do not suffer serious financial injury from an eviction moratorium that does not excuse tenants' rental obligations, particularly since Congress has appropriated tens of billions of dollars in rental assistance.  And it is difficult to contemplate a greater countervailing interest than fighting the most serious public health emergency in a century.

Plaintiffs accuse Defendants of "not even attempt[ing] to prove that [the government] will suffer irreparable injury in the absence of a stay."  Opp. at 5.  To the contrary, Defendants made clear on the first page of their motion that "undisputed scientific evidence shows that evictions exacerbate the spread of COVID-19, which has already killed more than half a million Americans, and the harm to the public that would result from unchecked evictions cannot be undone."  Defs.' Emergency Mot. for Stay Pending Appeal, ECF No. 57 (Mot.), at 1.  That argument was well supported:  Plaintiffs have conceded since the day they filed this case that "a moratorium on evictions may prevent the spread of COVID-19," Pls.' Mot. for Expedited Summ. J., ECF No. 6, at 1; each CDC Order has contained pages of analysis explaining why that is true; and the most recent CDC Order specifically explains that maintaining COVID-19 precautions "remains critical" if the country is "to avoid further rises in transmission" and prevent "yet another increase in the rates of new infections."  86 Fed. Reg. 16,731, 16,733 (Mar. 31, 2021).  CDC has also cautioned that new variants of the virus "show[] increased transmissibility as well as possible increased mortality."  *Id.*  The government has an obvious interest in protecting public health, *see, e.g.*, *Nicopure Labs, LLC v. FDA*, 944 F.3d 267, 284-85 (D.C. Cir. 2019),

---

[1] The ruling of a Sixth Circuit motions panel in *Tiger Lily*—which is not even "strictly binding upon subsequent panels" in that case, *Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014)—is not to the contrary.  *See Tiger Lily LLC v. U.S. Dep't of Housing & Urban Dev.*, 992 F.3d 518 (6th Cir. 2021).  Indeed, that court did not address any of the relevant equitable factors.  *See id.* at 524.  Moreover, the *Tiger Lily* motions panel had no occasion to consider the relief at issue here: the *Tiger Lily* judgment was limited to the Western District of Tennessee, whereas the judgment here applies nationwide.

and if avoidable deaths do not count as irreparable harm, it is hard to imagine what would.

Given this Court's obligation to balance the equities and Plaintiffs' failure to demonstrate any form of irreparable harm comparable to increased COVID-19 mortality, the Court should stay its order pending appeal. Plaintiffs' basic contention—that they may be unable to collect rent from tenants who have declared that they cannot currently pay, *see* Opp. at 7—has been considered in five challenges to the eviction moratorium, and it has failed each time. *See Dixon*, 2021 WL 1604250, at *4 (noting that "[f]ederal courts around the country have considered similar claims in discussing the existence of irreparable harm in challenges to the CDC's eviction moratorium"). As those courts have explained, "'although the tenants may not *currently* be able to afford their rent,' it does not follow . . . that '[plaintiffs] will likely never be able to collect a judgment.'"[2] *Id.* (quoting *Brown*, 2020 WL 6364310, at *20) (emphasis added); *see also, e.g.*, *Chambless*, 2020 WL 758849, at *14–16 (adopting the reasoning of the *Brown* court); *Tiger Lily*, 2020 WL 7658126, at *7–10 (describing the landlords' temporary monetary harm as "the antithesis of the irreparable harm needed to warrant a preliminary injunction"); *see also* Order, *KBW Inv. Props. LLC v. Azar*, ECF No. 16, No. 20-4852 (S.D. Ohio Sept. 25, 2020).

Plaintiffs' complaints of financial injury are especially unpersuasive now that Congress has appropriated $46.5 billion to help pay rent and rental arrears. These funds directly benefit landlords. *See, e.g.*, U.S. Dep't of the Treasury, Emergency Rental Assistance Fact Sheet, at 1 (May 7, 2021), https://go.usa.gov/xH73R (announcing the allocation of the additional $21.5 billion provided by the American Rescue Plan Act and emphasizing that "[t]his infusion of additional support will benefit both renters and landlords"). Plaintiffs assert that "Congress's recent rental-assistance measures have been marred by delays and rollout problems," Opp. at 8, but it is black-letter law that mere delay in

---

[2] Plaintiffs' cases dealing with costs that are concededly irrecoverable, for reasons like sovereign immunity, *see* Opp. at 7, are thus inapposite.

receiving money is not irreparable harm. *See, e.g.*, *Davenport v. Int'l Bh'd of Teamsters*, 166 F.3d 356, 367 (D.C. Cir. 1999) (financial injury that "can be remedied with money damages" is not irreparable) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). And in any case, Congress anticipated that the distribution of federal rental assistance would take time: the moratorium is meant to work in conjunction with the appropriations by "ensur[ing] that millions of renters across America are not evicted while waiting to receive assistance." U.S. H. Comm. on Fin. Servs., *COVID-19 Stimulus Package: Temporary Extension of the CDC Eviction Moratorium & Emergency Rental Assistance*, https://go.usa.gov/xss3y (last visited May 11, 2021); *see also* 167 Cong. Rec. H1281 (daily ed. Mar. 10, 2021) (statement of Rep. Waters) (urging the CDC to "again extend the federal eviction moratorium that expires on March 31, 2021 so that grantees have time to distribute assistance to renters in need").

These appropriations belie Plaintiffs' contention that the government has simply shifted economic burdens from renters to landlords. *See* Opp. at 2. Plaintiffs state that Mr. Fordham and Mr. Gilstrap have not yet received emergency rental assistance, *id.* at 8, implicitly suggesting that the remaining plaintiffs (or their members) may have already received such federal funding. And Plaintiffs do not claim that Mr. Fordham and Mr. Gilstrap applied for such emergency assistance on behalf of their tenants and were denied. In Georgia, for example—where Mr. Gilstrap's business operates—the State has explained that the federal funds will be "distributed directly to landlords, and eligible applicants will receive up to 12 months of payment relief." Georgia Dep't of Cmty. Affairs, *State of Georgia's U.S. Treasury Emergency Rental Assistance Program*, https://georgiarentalassistance.ga.gov (last visited May 11, 2021). And the moratorium does not apply unless a tenant declares under penalty of perjury that he or she "has used best efforts to obtain all available government assistance for rent or housing." 86 Fed. Reg. at 16,732.

In any case, the most critical interest—one that court after court has said is paramount—is protecting Americans from a highly contagious and potentially fatal virus. *See, e.g.*, *League of Indep.*

*Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 129 (6th Cir. 2020); *Brown*, 2020 WL 6364310, at *23. Yet rather than take on those cases, Plaintiffs wrongly suggest that this interest has vanished because the pandemic is not as dire as it once was. *See* Opp. at 8.

While there has been progress since "the height of the pandemic," Opp. at 8, serious challenges remain: only 34.8% of the country has been fully vaccinated, the rate of new vaccinations is falling, and the average daily case rate of 38,678 infections per day remains higher than during the initial April 2020 peak. More than four thousand Americans are still dying of COVID-19 each week. *See generally* CDC COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker (last visited May 11, 2021). Those numbers are no less alarming because the pandemic was worse four months ago, and the public interest in preventing thousands of deaths each week cannot be dismissed as "unpersuasive." Opp. at 8. Moreover, the progress that has occurred happened because millions of Americans followed the direction of public health experts to wear face masks, practice social distancing, and limit interstate travel—and heeded the CDC order to refrain from evicting residential tenants, who could be unable to practice those safety measures if evicted. The same public health experts remain adamant that lifting the eviction moratorium would be premature. The Court should not lightly disregard those public health experts, and it certainly should not wipe away their public health order without giving the D.C. Circuit a chance to weigh in first.

**II.     The Government Is Likely To Succeed on the Merits.**

Although Defendants recognize that this Court disagreed with them on the merits, Defendants respectfully submit that they will prevail on appeal for the reasons set out in detail in their D.C. Circuit stay motion. Contrary to Plaintiffs' assertion, this Court need not "second-guess" its own ruling to issue a stay here. *See, e.g.*, *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) ("The court is not required to find that ultimate success by the movant is a mathematical probability, and indeed, . . . may grant a stay even though its own approach may be

6

contrary to [the] movant's view of the merits."); *Ctr. for Int'l Envt'l Law v. Office of U.S. Trade Rep.*, 240 F. Supp. 2d 21, 22 (D.D.C. 2003). A stay pending appeal is plainly appropriate given both the disagreement among courts on the merits and the nationwide reach of this Court's judgment.

As Defendants have explained in this litigation and in their stay motion before the D.C. Circuit, Congress itself confirmed that the CDC Order was a valid exercise of the agency's authority when Congress extended the CDC Order "issued by the Centers for Disease Control and Prevention under section 361 of the [PHSA] (42 U.S.C. 264)." Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, div. N, tit. V, § 502, 134 Stat. 1182, 2078-79 (2020). By specifically referencing CDC's § 264 authority, Congress determined that a temporary eviction moratorium was a permissible measure under § 264 to curb the spread of COVID-19. Congress did not impose an eviction moratorium itself or provide new authority to CDC. Instead, an essential premise of Congress's legislative action was that the original Order was valid.

Through its explicit confirmation of CDC's statutory authority, Congress ensured that CDC could further extend the moratorium if public health experts determined that the conditions of the pandemic so required—a power crucial to Congress's pandemic response efforts. As explained above, the moratorium was meant to work in tandem with the $25 billion in rental assistance appropriated in the same Act, and which Congress recently increased with an additional $21.5 billion appropriated for the same purpose. By explicitly recognizing CDC's § 264 authority for the temporary eviction moratorium, Congress ensured that CDC could extend a moratorium that helps prevent millions of Americans from being evicted—thereby exacerbating the spread of the virus—while waiting for federal relief funds to be distributed.

Congress's recent action thus confirms that the moratorium was within CDC's § 264 authority. *See, e.g.*, *Branch v. Smith*, 538 U.S. 254, 281 (2003) (statutory interpretation includes "later-enacted statutes"). In any event, CDC reasonably determined at the outset that its temporary eviction

moratorium—in the face of a once-in-a-century global pandemic—was "necessary to prevent the introduction, transmission, or spread of communicable diseases" into the country or among the states. 42 U.S.C. § 264(a). As other district courts have recognized, this plain statutory language makes evident Congress's intent to provide "broad power" to CDC to combat the interstate spread of dangerous diseases. *See Chambless*, 2020 WL 7588849, at *5; *Brown*, 2020 WL 6364310, at *7; *see also City of Arlington v. FCC*, 569 U.S. 290, 296 (2013) ("Congress knows to speak in plain terms when it wishes to circumscribe, and in capacious terms when it wishes to enlarge, agency discretion."). And as those courts have explained, the structure of § 264 forecloses the contention that the measures identified in the second sentence of § 264(a) are exhaustive. Defendants acknowledge that the Court has rejected these arguments, but they are serious and substantial, and Defendants expect to prevail on them in the D.C. Circuit.

At a minimum, this Court should exercise its discretion to stay the judgment as to all non-parties. Defendants recognize that the Court reads *National Mining Association v. U.S. Army Corps of Engineers*, 145 F.3d 1399 (D.C. Cir. 1998), to require nationwide vacatur. *See* Minute Order dated May 5, 2021. Without belaboring the point, Defendants respectfully submit that such a conclusion is not required by the reasoning of *National Mining* and, if adopted, would create a direct conflict with precedent in the Fourth Circuit, *see Va. Soc'y for Human Life, Inc. v. Fed. Election Comm'n*, 263 F.3d 379, 393–94 (4th Cir. 2001) (holding that "[n]othing in the language of the APA" requires "an order setting aside [an unlawful] regulation for the entire country"). A stay as to non-parties would give the D.C. Circuit the opportunity to consider whether *National Mining* is as inflexible as Plaintiffs contend and ensure that this Court's decision does not effectively preempt other Circuits' review of the issues presented here. Such a stay will cause Plaintiffs no prejudice, protect the public health, and extend comity to other federal judges.

## CONCLUSION

Defendants respectfully request that the Court stay its order pending appeal. In the alternative, the Court should enter such a stay as to all regulated persons other than Plaintiffs. And if nothing else, the Court should extend the administrative stay for an additional seven days to permit the D.C. Circuit sufficient time to consider Defendants' motion filed in that Court.

Dated: May 11, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ERIC BECKENHAUER
Assistant Director, Federal Programs Branch

*/s/ Steven A. Myers*
STEVEN A. MYERS
Senior Trial Counsel (NY Bar No. 4823043)
LESLIE COOPER VIGEN
Trial Attorney (DC Bar No. 1019782)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8648
Fax: (202) 616-8470
E-mail: steven.a.myers@usdoj.gov

*Counsel for Defendants*