UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALABAMA ASSOCIATION OF
REALTORS, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES, *et al.*,

    *Defendants*.

No. 20-cv-3377 (DLF)

## **MEMORANDUM OPINION**

Before the Court is the Department of Health and Human Service's ("the Department") Emergency Motion for Stay Pending Appeal. Dkt. 57. Pursuant to Federal Rule of Civil Procedure 62(c), the Department seeks a stay of the Court's May 5, 2021 order vacating the nationwide eviction moratorium issued by the Centers for Disease Control and Prevention ("CDC"). *See* Dkt. 53. For the reasons that follow, the Court will grant the motion.

### I.    LEGAL STANDARD

A stay pending appeal is an "extraordinary remedy," *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985) (per curiam), as it "is an intrusion into the ordinary processes of administration and judicial review," *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted). Accordingly, it "is not a matter of right." *Id.* (internal quotation marks omitted). "It is instead an exercise of judicial discretion" that "is dependent upon the circumstances of the particular case." *Id.* at 433 (internal quotation marks omitted).

The moving party bears the burden of showing that this extraordinary remedy is warranted upon consideration of four factors: "(1) whether the stay applicant has made a strong

showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 433–34 (internal quotation marks omitted).  The first two factors "are the most critical," *id.* at 434, and when the government is a party, its "harm and the public interest are one and the same, because the government's interest *is* the public interest," *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original); *see Nken*, 556 U.S. at 435.

"The manner in which courts should weigh the four factors 'remains an open question' in this Circuit." *Nora v. Wolf*, No. 20-cv-0993, 2020 WL 3469670, at *6 (D.D.C. Jun. 25, 2020) (quoting *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014)).  At least in the context of weighing whether to grant a preliminary injunction, the D.C. Circuit has "suggested, without deciding," that *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), could be read to require a plaintiff "to independently demonstrate both a likelihood of success on the merits and irreparable harm," *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C. 2016) (quoting *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011)).  But in the absence of clear guidance, courts in this Circuit have continued to analyze the factors "on a sliding scale whereby a strong showing on one factor could make up for a weaker showing on another." *NAACP v. Trump*, 321 F. Supp. 3d 143, 146 (D.D.C. 2018) (internal quotation marks omitted).  Under this framework, a movant may make up for a lower likelihood of success on the merits "with a strong showing as to the other three factors, provided that the issue on appeal presents a 'serious legal question' on the merits." *Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 560 (D.D.C. 2018) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)).  Here, the Court will adopt the approach taken by other judges

and "apply th[is] sliding scale approach" to determine whether the Department is entitled to a stay pending resolution of its appeal. *See NAACP*, 321 F. Supp. 3d at 146 (internal quotation marks omitted). To prevail under this standard, the Department "need only raise a serious legal question on the merits" if the "other factors strongly favor issuing a stay." *Id.* (internal quotation marks omitted).

## II. ANALYSIS

### A. Likelihood of Success

As to the first factor—the likelihood of success on the merits—"[i]t is not enough that the chance of success on the merits [is] better than negligible." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). Rather, it must be "substantial." *Holiday Tours*, 559 F.2d at 843.

Here, the Department has not shown a substantial likelihood of success on the merits. The Public Health Service Act provides, in relevant part:

> The [CDC], with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such regulations, the [Secretary] may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary.

42 U.S.C. § 264(a).

The Department continues to argue that this statutory provision vests the Secretary with "broad authority to make and enforce" *any* regulations that "in his judgment are necessary to prevent the spread of disease," Defs.' Mot. for Summ. J. at 11 (internal quotation marks omitted), Dkt. 26, and that the second sentence of § 264(a) imposes no limit on this "broad grant of authority," Defs.' Emergency Mot. for Stay Pending Appeal ("Defs.' Mot. to Stay") at 7–8.

The Court disagrees. Like other courts before it, this Court concluded in its May 5, 2021 Memorandum Opinion that the broad grant of rulemaking authority in the first sentence of § 264(a) is tethered to—and narrowed by—the second sentence, which enumerates various measures the Secretary "may provide for" to carry out and enforce regulations issued under § 264(a): "inspection, fumigation, disinfection, sanitation, pest extermination, [and] destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings." 42 U.S.C. § 264(a); *see* Mem. Op. of May 5, 2021 at 11, Dkt. 54. The Department is correct that this list of measures is not exhaustive, as the Secretary may provide for "other measures, as in his judgment may be necessary." 42 U.S.C. § 264(a). But these "other measures" are "controlled and defined by reference to the enumerated categories before it." *See Tiger Lily, LLC v. U.S. Dep't of Hous. & Urb. Dev.*, 992 F.3d 518, 522–23 (6th Cir. 2021) (internal quotation marks and alteration omitted).

With that in mind, the statute could be read as requiring that the enumerated measures be directed toward "animals or articles," 42 U.S.C. § 264(a), that are "found to be so infected or contaminated as to be sources of dangerous infection to human beings," *id.*; *see Skyworks, Ltd. v. Ctrs. for Disease Control & Prevention*, No. 5:20-cv-2407, 2021 WL 911720, at *10 (N.D. Ohio Mar. 10, 2021); Mem. Op. of May 5, 2021 at 11–12. Alternatively, the statute could be interpreted to tie the limitations surrounding "animals or articles" solely to "destruction." 42 U.S.C. § 264(a). But even then, the enumerated measures—"inspection, fumigation, disinfection, sanitation, [and] pest extermination," *id.*—are "by their common meanings and understandings. . . tied to specific, identifiable properties," *Skyworks*, 2021 WL 911720, at *9. And under either reading, an eviction moratorium is "radically unlike" the measures enumerated in the statute. *See Tiger Lily*, 992 F.3d at 524 (interpreting 42 U.S.C. § 264(a)). As this Court

4

and others have noted, to read the enumerated measures in § 264(a) as imposing no limits on the Secretary's authority to "make and enforce regulations" would raise serious constitutional concerns.  *See* Mem. Op. of May 5, 2021 at 14 (collecting cases).

The Department also contends it has a "substantial likelihood of success on appeal because Congress ratified the CDC Order in the 2021 Consolidated Appropriations Act."  Defs.' Mot. to Stay at 2.  In § 502 of that Act, Congress provided:

> The order issued by the Centers for Disease Control and Prevention under section 361 of the Public Health Service Act (42 U.S.C. 264), entitled ''Temporary Halt in Residential Evictions To Prevent the Further Spread of COVID–19'' (85 Fed. Reg. 55292 (September 4, 2020) is extended through January 31, 2021, notwithstanding the effective dates specified in such Order.

Pub. L. No. 116-260, § 502, 134 Stat. 1182, 2078–79 (2020).

It is true that Congress may "give the force of law to official action unauthorized when taken."  *Swayne & Hoyt v. United States*, 300 U.S. 297, 301–02 (1937).  But to ratify such action, Congress must make its intention clear.  *See United States v. Heinszen & Co.*, 206 U.S. 370, 390 (1907); *see also Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 n.7 (D.C. Cir. 2006) (noting ratification may occur when there is a "clear statement of congressional approval") (internal citation omitted).  While no "magic words are required," Defs.' Reply in Supp. of Partial Mot. to Dismiss at 5, Dkt. 38, Congress must use "clear and unequivocal language," *EEOC v. CBS, Inc.*, 743 F.2d 969, 974 (2d Cir. 1984), to ratify "official action unauthorized when taken," *Swayne & Hoyt*, 300 U.S. at 302.

Congress did not do so here.  As other cases illustrate, the language of § 502 falls short of statutory provisions courts have found to ratify agency action.  *See, e.g.*, *Thomas v. Network Sols., Inc.*, 176 F.3d 500, 505 (D.C. Cir. 1999) ("is hereby legalized and ratified and confirmed as fully to all intents and purposes as if the same had, by prior act of Congress, been specifically

5

authorized and directed"); *Patchak v. Jewell*, 109 F. Supp. 3d 152, 158 (D.D.C. 2015) ("are ratified and confirmed"), *aff'd,* 828 F.3d 995 (D.C. Cir. 2016), *aff'd sub nom. Patchak v. Zinke*, 138 S. Ct. 897 (2018); *Am. Fed'n of Gov't Emps. v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 133 F. Supp. 2d 75, 77–78 (D.D.C. 2001) ("is hereby ratified and approved"); *James v. Hodel*, 696 F. Supp. 699, 701 (D.D.C. 1988) ("Congress hereby ratifies and confirms"), *aff'd sub nom. James v. Lujan*, 893 F.2d 1404 (D.C. Cir. 1990); *Heinszen*, 206 U.S. at 381 ("hereby legalized and ratified" and "is hereby legalized and ratified and confirmed as fully to all intents and purposes as if the same had, by prior act of Congress, been specifically authorized and directed"); *cf. Ex parte Endo*, 323 U.S. 283, 303 n.24 (1944) (ratification may occur through an appropriation only if the appropriation "plainly show[s] a purpose to bestow the precise authority which is claimed."); *Schism v. United States*, 316 F.3d 1259, 1290 (Fed. Cir. 2002) ("[R]atification ordinarily cannot occur in the appropriations context unless the appropriations bill itself *expressly* allocates funds for a specific agency or activity.") (emphasis added).

By contrast, when Congress enacted § 502 of the Consolidated Appropriations Act, it simply acknowledged that the CDC issued its order pursuant to the Public Health Service Act. Mem. Op. of May 5, 2021 at 18.  It did not expressly approve of the agency's interpretation of 42 U.S.C. § 264(a), nor did it provide the agency with any additional statutory authority.  *See id.* "All § 502 did was congressionally extend the agency's action until January 31, 2021." *Tiger Lily*, 992 F.3d at 524.  Because that date has now passed—and Congress has therefore withdrawn its support—the CDC Order must rely exclusively on the text of the Public Health Service Act. *See id.*

The Department also points to the "nationwide reach of this Court's judgment," Defs.' Reply in Supp. of Mot. to Stay at 7, Dkt. 59, and insists that "traditional principles of equity and

Article III jurisdiction *require* limiting relief to the Plaintiffs," Defs.' Mot. to Stay at 8–9 (emphasis added). This argument, however, is "at odds with settled precedent." *See O.A. v. Trump*, 404 F. Supp. 3d 109, 153 (D.D.C. 2019). The D.C. Circuit has instructed that when a regulation is declared unlawful, "the ordinary result is that the rule[] [is] vacated—not that [its] application to the individual petitioner is proscribed." *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (internal quotation marks omitted). In this Circuit, "the law is clear that when a court vacates an agency rule, the vacatur applies to all regulated parties, not only those formally before the court." *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 415 (D.D.C. 2020); *O.A.*, 404 F. Supp. 3d at 152 (collecting cases).

For these reasons and for those stated in the Court's May 5, 2021 Memorandum Opinion, the Department has not shown a substantial likelihood of success on the merits. Arguably, the Department's failure to meet this standard is a fatal flaw for its motion. *See M.M.V. v. Barr*, 459 F. Supp. 3d 1, 4 (D.D.C. 2020) (citing *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam)). Indeed, in another case challenging the CDC Order, the Sixth Circuit denied a similar emergency motion for stay on this ground alone. *See Tiger Lily*, 992 F.3d at 524 ("Given that the government is unlikely to succeed on the merits, we need not consider the remaining stay factors.").

But, as noted, in this Circuit a movant's failure to demonstrate a likelihood of success on the merits does not preclude a stay if they have raised a "serious legal question on the merits." *See Cigar Ass'n of Am.*, 317 F. Supp. 3d at 560 (internal quotation marks omitted); *Holiday Tours*, 559 F.2d at 843. Although a majority of courts that have addressed the lawfulness of the CDC Order reached the same conclusion as this Court, *see* Mem. Op. of May 5, 2021 at 5 (collecting cases), two have disagreed, at least at the preliminary injunction stage, *see Brown v.*

7

*Azar*, No. 20-cv-03702, 2020 WL 6364310, at *9–11 (N.D. Ga. Oct. 29, 2020), *appeal filed*, No. 20-14210 (11th Cir. 2020); *Chambless Enters., LLC v. Redfield*, No. 20-cv-01455, 2020 WL 7588849, at *5–9 (W.D. La. Dec. 22, 2020), *appeal filed,* No. 21-30037 (5th Cir. 2021).  Given the diverging rulings of these courts and the significance of the CDC Order, the Department has met this less demanding standard.  *See Cigar Ass'n of Am.*, 317 F. Supp. 3d at 560 (internal quotation marks omitted).  The Department therefore can obtain a stay if it makes a sufficiently strong showing as to the remaining stay factors.  *See NAACP*, 321 F. Supp. 3d at 146.

### B.  Remaining Factors

As to the second factor—whether the movant will be irreparably injured absent a stay—the movant must make a strong showing "that the injury claimed is both certain and great." *Cuomo*, 772 F.2d at 976 (internal quotation marks omitted).  "Probability of success is inversely proportional to the degree of irreparable injury evidenced." *Id.* at 974.  "A stay may be granted with either a high probability of success and some injury, or vice versa." *Id.*

The Department has made a showing of irreparable injury here.  As the federal agency tasked with disease control, the Department, and the CDC in particular, have a strong interest in controlling the spread of COVID-19 and protecting public health.  The CDC's most recent order is supported by observational data analyses that estimate that as many as 433,000 cases of COVID-19 and thousands of deaths could be attributed to the lifting of state-based eviction moratoria.  *See* 86 Fed. Reg. 16,731, 16,734 (Mar. 31, 2021).  The CDC Order also cites a mathematical model that "estimate[s] that anywhere from 1,000 to 100,000 excess cases per million population could be attributable to evictions depending on the eviction and infection rates." *Id.*  To be sure, these figures are estimates, but they nonetheless demonstrate that lifting the national moratorium will "exacerbate the significant public health risks identified by [the]

CDC." Defs.' Mot. to Stay at 3. Even though "vaccinations are on the rise," Pls.' Opp'n at 2, at least as of last week, the nation was averaging "more than 45,000 new infections per day," Defs.' Mot. to Stay at 5–6, and the recent "emergence of variants" presents yet another potential cause for concern, *see* 86 Fed. Reg. at 16,733. Thus, the risks to public health continue.

As to the third factor—the risk of injury to the plaintiffs—the economic impact of the CDC Order is indeed substantial. *See* Mem. Op. of May 5, 2021 at 15 n.4. The plaintiffs assert that landlords will continue to lose between $13.8 and $19 billion each month in unpaid rent as a result of the CDC Order, and that over the course of the year their cumulative losses will be close to $200 billion. Pl's Opp'n at 7 (citing Decl. of Scholastica Cororaton ¶¶ 15, 17, Dkt. 6-4).

While these financial losses are severe, some are recoverable. *See Brown*, 2020 WL 6364310, at *20 (explaining that the fact "tenants may not currently be able to afford their rent" does not mean that the plaintiffs "will likely never be able to collect a judgment"). The CDC Order itself does not excuse tenants from making rental payments. *See* 86 Fed. Reg. at 16,736. It simply delays them. *See id.* Congress also has taken steps to provide financial relief to tenants and landlords through the Consolidated Appropriations Act, § 501, 134 Stat. at 2070–78, and the American Rescue Plan Act, Pub. L. No. 117-2, § 3201(a)(1), 135 Stat. 4, 54 (2021). These efforts help mitigate the landlords' financial losses.

A stay to allow the D.C. Circuit time to review this Court's ruling, presumably on an expedited basis, will no doubt result in continued financial losses to landlords. But the magnitude of these additional financial losses is outweighed by the Department's weighty interest in protecting the public. *See League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 129–30 (6th Cir. 2020).

Finally, the fourth factor—the public interest—weighs in favor of a stay for the public health reasons discussed. The fact that this "litigation presents questions of 'extraordinary public moment' [is] a consideration which [also] militates in favor of a stay." *Al-Adahi v. Obama*, 672 F. Supp. 2d 81, 84 (D.D.C. 2009) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936)).

\*\*\*

Weighing each of the traditional stay factors, the Court will exercise its discretion to grant the Department's Emergency Motion for Stay Pending Appeal. Although the Court believes, as one Circuit has already held, *see Tiger Lily*, 992 F.3d at 524, there is not a substantial likelihood the Department will succeed on appeal, the CDC's nationwide eviction moratorium raises serious legal questions. The Department also has made a sufficiently strong showing as to the remaining factors to justify a stay of this Court's decision.

The Court remains mindful that landlords across the country have incurred substantial economic hardships as a result of the CDC's nationwide moratorium on evictions. The longer the moratorium remains in effect, the more these hardships will be exacerbated. Even so, given the public health consequences cited by the CDC, a stay is warranted.

## CONCLUSION

For the foregoing reasons, the Department's Emergency Motion for Stay Pending Appeal is granted. A separate order consistent with this decision accompanies this memorandum opinion.

May 14, 2021

*Dabney L. Friedrich*
DABNEY L. FRIEDRICH
United States District Judge