IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALABAMA ASSOCIATION OF REALTORS®, *et al.*, <br><br> *Plaintiffs*, <br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> *Defendants.* | No. 1:20-cv-03377-DLF |

**EMERGENCY MOTION TO ENFORCE THE SUPREME COURT'S RULING AND TO VACATE THE STAY PENDING APPEAL**

The Centers for Disease Control and Prevention's ("CDC") fourth extension of the eviction moratorium until October 3, 2021, conflicts with the Supreme Court's ruling that the CDC could not extend the eviction moratorium beyond July 31, 2021. After this Court entered final judgment holding that the eviction moratorium "is unambiguously foreclosed by the plain language of the Public Health Service Act," ECF 54, at 19, the Supreme Court allowed the moratorium to continue until July 31 in reliance on the CDC's assurance that it had no intention of issuing a further extension, *see Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2320, 2320–21 (2021) (Kavanaugh, J., concurring) ("Because the CDC plans to end the moratorium in only a few weeks, on July 31 . . . I vote at this time to deny the application to vacate the District Court's stay of its order."). But as Justice Kavanaugh explained in his controlling opinion, because the CDC "exceeded its existing statutory authority by issuing a nationwide eviction moratorium," "clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31." *Id.*

As that date approached, the White House repeatedly stated that the Supreme Court's ruling had unequivocally blocked the CDC from extending the eviction moratorium through executive action. Taking a cue from Justice Kavanaugh's controlling concurrence, Congress attempted to pass

1

legislation, but failed.  After Congress's failure to extend the moratorium, the Speaker of the House and other Representatives demanded that the CDC extend the moratorium through executive action anyway.  Thus began what became a tidal wave of political pressure put upon the CDC.  One member of Congress dared the CDC to do it: "Who is going to stop them? Who is going to penalize them?" @RepMaxineWaters, Twitter (Aug. 2, 2021, 4:19 PM), https://bit.ly/2VhjaIA.  The CDC held firm for a few days—with support from the White House insisting that the Supreme Court's ruling had tied the CDC's hands on extending the moratorium.

But on August 3, the CDC caved to the political pressure by extending the moratorium, without providing any legal basis.  In substance and effect, the CDC's latest action is an extension of the same unlawful ban on evictions that has been in effect since September 2020.  Indeed, the fourth extension relies on the same source of authority—Section 361 of the Public Health Service Act—that this Court, the Sixth Circuit, and a majority of the Supreme Court found inadequate to justify the eviction moratorium.  The CDC's semantic recasting of the latest extension—which covers 90% of renters across the country, while leaving intact its ability to ratchet up to 100%—is a distinction without a difference because it has no bearing on the CDC's legal authority.

This Court should immediately vacate the CDC's fourth extension because it conflicts with the Supreme Court's ruling.  A majority of the Supreme Court made clear that the eviction moratorium exceeds the CDC's statutory authority and could not be extended beyond July 31, thus vindicating this Court's first merits ruling.  The Supreme Court's ruling was hardly ambiguous.  Indeed, the White House clearly acknowledged that the Supreme Court had ruled that the CDC lacked authority to extend the moratorium—and that the CDC was blocked from extending the moratorium.  Because the CDC's August 3 extension conflicts with the Supreme Court's ruling, this Court should enforce

that ruling by vacating the August 3 extension (or simply clarifying that the original vacatur order covers it) and vacating this Court's May 14 order granting a stay pending appeal.

Expedited relief vacating the August 3 extension is appropriate because the CDC appears to have acted in bad faith. The Supreme Court ruled that only the Legislative Branch—not the Executive—had authority to extend the moratorium. Critically, the CDC knew that the White House had repeatedly stated that new legislation was necessary to extend the moratorium, given the absence of executive legal authority. Congress tried, but failed, to enact a legislative extension in reliance on those representations. Yet rather than accept that as the final word under our constitutional system (which the White House initially appeared to do), the CDC extended the moratorium anyway. And the CDC did so for nakedly political reasons—to ease the political pressure, shift the blame to the courts for ending the moratorium, and use litigation delays to achieve a policy objective. The Court should block the August 3 extension on an expedited basis to relieve the nation's property owners of the burden of complying with this unlawful agency action.

Pursuant to LCvR 7(m), undersigned counsel conferred with Defendants' counsel, who stated that Defendants oppose this motion.

## BACKGROUND

### A.     This Court Vacates the Eviction Moratorium

On May 5, 2021, this Court held that the Public Health Service Act "unambiguously forecloses the nationwide eviction moratorium." ECF 54, at 20. The Court rejected the government's assertion that so long as the CDC "can make a determination that a given measure is 'necessary' to combat the interstate or international spread of disease, there is no limit to the reach of [its] authority" under the Public Health Service Act. *Id.* at 15. As the Court explained, construing 42 U.S.C. § 264 to "extend[] a nearly unlimited grant of legislative power" to the Secretary would not only "ignore its text and

structure," but would also "raise serious constitutional concerns," including the legality of "'such a broad delegation of power unbounded by clear limitations or principles.'" *Id.* at 14; *see id.* at 7–16. In addition, the Court observed, accepting the government's "expansive interpretation" would require embracing the implausible assumption that Congress "delegated to the Secretary the authority to resolve not only" the momentous decision to criminalize evictions nationwide, but "endless others that are also subject to 'earnest and profound debate across the country.'" *Id.* at 15. Because "Congress did not express a clear intent" to confer "such sweeping authority," the court declined to take that step itself. *Id.* at 14; *see id.* at 14–16. The Court therefore issued a final judgment vacating the CDC's eviction moratorium. ECF 53.

The Court nevertheless entered a stay of its final judgment pending appeal. ECF 60–61. In doing so, the Court acknowledged that the government had failed "to demonstrate a likelihood of success on the merits" and that this is "[a]rguably … a fatal flaw for its motion." ECF 61, at 7. But relying on D.C. Circuit precedent, the Court determined it could employ a "'sliding scale approach'" under which the government "'need only raise a serious legal question' if the 'other factors strongly favor issuing a stay.'" *Id.* at 2–3 (citations omitted). As the Court explained, the government had "met this less demanding standard" in part because two other district courts had "disagreed" with the Court's analysis, "at least at the preliminary injunction stage." *Id.* at 7–8. Turning to the equities, the Court acknowledged that a stay "will no doubt result in continued financial losses to landlords," which remain "severe." *Id.* at 9. But the Court decided that the equities favored the government on the theory that "some" of these losses could be recovered and that "public health" considerations were more important. *Id.* The D.C. Circuit subsequently denied Plaintiffs' motion to vacate the stay in an unpublished opinion. *See Ala. Ass'n of Realtors v. HHS*, No. 21-5093, 2021 WL 2221646 (D.C. Cir. June 2, 2021).

### B.     The Supreme Court Agrees That the CDC Exceeded Its Statutory Authority

After Plaintiffs asked the Supreme Court to vacate the stay, the CDC extended the eviction moratorium for a third time through July 31, 2021.  *See* CDC, *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19* (June 24, 2021), https://bit.ly/3fuLygS.  In issuing the order, the CDC stated that "[a]lthough this Order is subject to revision based on the changing public health landscape, absent an unexpected change in the trajectory of the pandemic, CDC does not plan to extend the Order further." *Id.* at 6; *see also id.* at 12.

The Supreme Court relied on this assurance from the CDC when it denied Plaintiffs' application to vacate the stay pending appeal on June 29, 2021.  *See Ala. Ass'n of Realtors*, 141 S. Ct. 2320.  But four justices—Justices Thomas, Alito, Gorsuch, and Barrett—would have "grant[ed] the application" because Plaintiffs had carried their burden to demonstrate, among other things, that the CDC exceeded its statutory authority in issuing the moratorium and that the equitable factors did not justify a stay.  *Id.*  That is because under Supreme Court practice, a Circuit Justice may "vacate a stay where it appears that the rights of the parties to a case pending in the court of appeals, which case could and very likely would be reviewed here upon final disposition in the court of appeals, may be seriously and irreparably injured by the stay, and the Circuit Justice is of the opinion that the [lower court] is demonstrably wrong in its application of accepted standards in deciding to issue the stay." *Coleman v. Paccar, Inc.*, 424 U.S. 1301, 1304 (1976) (Rehnquist, J., in chambers).  And the "accepted standards" for issuing a stay, *id.*, are that a stay may be granted only when the movant has made (1) "a strong showing that [it] is likely to succeed on the merits" and a showing that (2) it "will be irreparably injured absent a stay," (3) a stay will not "substantially injure the other parties interested in the proceeding," and (4) "the public interest" favors a stay.  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted).

> Justice Kavanaugh issued a concurring opinion, explaining:
>
>> I agree with the District Court and the applicants that the Centers for Disease Control and Prevention exceeded its existing statutory authority by issuing a nationwide eviction moratorium. *See Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014). Because the CDC plans to end the moratorium in only a few weeks, on July 31, and because those few weeks will allow for additional and more orderly distribution of the congressionally appropriated rental assistance funds, I vote at this time to deny the application to vacate the District Court's stay of its order. *See Barnes v. E-Systems, Inc. Group Hospital Medical & Surgical Ins. Plan*, 501 U. S. 1301, 1305 (1991) (Scalia, J., in chambers) (stay depends in part on balance of equities); *Coleman v. Paccar Inc.*, 424 U.S. 1301, 1304 (1976) (Rehnquist, J., in chambers). In my view, clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31.

*Ala. Ass'n of Realtors*, 141 S. Ct. at 2320–21 (Kavanaugh, J., concurring). With five justices agreeing that the CDC lacked authority to issue an eviction moratorium, Justice Kavanaugh's controlling opinion made clear that the CDC could not extend the moratorium beyond July 31 absent new legislation.

### C. The President and His Advisors Concede That the CDC Lacks Authority to Extend the Eviction Moratorium

On July 29, 2021, the White House announced that the CDC would not extend the eviction moratorium beyond July 31 because "the Supreme Court has made clear that this option is no longer available. In June, when CDC extended the eviction moratorium until July 31st, the Supreme Court's ruling stated that 'clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31.'" The White House, *Statement by White House Press Secretary Jen Psaki on Biden-Harris Administration Eviction Prevention Efforts* (July 29, 2021), https://bit.ly/3jm0K17. The White House said that, "in light of the Supreme Court's ruling, you know, the President is going to work with Congress to make that happen." The White House, *Press Briefing by Principal Deputy Press Secretary Karine Jean-Pierre* (July 29, 2021), https://bit.ly/3ioiXvL; *see also*


The White House, *Press Briefing by Principal Deputy Press Secretary Karine Jean-Pierre* (July 30, 2021), https://bit.ly/2TROI6S.

In response to this announcement from the White House, the House of Representatives tried—and failed—to pass legislation extending the eviction moratorium on short notice. *See* 167 Cong. Rec. H4302–03 (July 30, 2021) (H.R. 4791 – *Protecting Renters from Evictions Act of 2021*); David Shepardson, *U.S. Lawmakers Fail to Renew Pandemic-Related Residential Eviction Ban*, Reuters (Aug. 2, 2021), https://reut.rs/3ijcDWh.

After the House failed to pass legislation, the focus then shifted back to the White House where, on July 30, the President announced that the eviction moratorium would expire the next day. "As the eviction moratorium deadline approaches tomorrow, I call on all state and local governments to take all possible steps to immediately disburse these funds given the imminent ending of the CDC eviction moratorium." The White House, *Statement by President Joe Biden on Eviction Prevention Efforts and Emergency Rental Assistance* (July 30, 2021), https://bit.ly/3ikZsUU.

Then, after the eviction moratorium had expired, the White House reaffirmed on August 2 that CDC lacked authority to extend the moratorium. Although "the President would have strongly supported a decision by the Centers for Disease Control and Prevention (CDC) to further extend its eviction moratorium," "the Supreme Court declared on June 29th that the CDC could not grant such an extension without 'clear and specific congressional authorization (via new legislation).'" The White House, *Statement by Press Secretary Jen Psaki on Eviction Prevention Efforts* (Aug. 2, 2021), https://bit.ly/3lwEt3o.

At a press briefing on the same day, the White House maintained its view that the CDC had no authority to extend the moratorium "without clear and specific congressional authorization." The White House, *Press Briefing by Press Secretary Jen Psaki and White House American Rescue Plan Coordinator*

7

*and Senior Advisor to the President Gene Sperling* (Aug. 2, 2021), https://bit.ly/3xoNzBt. "To date, the CDC Director and her team have been unable to find legal authority, even for a more targeted eviction moratorium that would focus just on counties with higher rates of COVID spread." *Id.*

During the same briefing, a Senior Advisor to the President stated that the CDC had tried—and failed—to "find the legal authority" for an extension after "double, triple, quadruple" checking. *Id.* He explained that the President "has asked the CDC to look at whether you could even do targeted eviction moratorium—that just went to the counties that have higher rates—and they, as well, have been unable to find the legal authority for even new, targeted eviction moratoriums." *Id.* He also acknowledged that "the wording in the Supreme Court opinion was fairly, you know, clear that—they said the CDC did not—could not grant such extension without, quote, 'clear and specific congressional authorization.'" *Id.* He described this as "a very difficult obstacle from the Supreme Court ruling." *Id.*

As late as August 3, the White House stated that the CDC lacked authority to extend the moratorium because "the Supreme Court came out and they—they put a stay on the moratorium and made clear in their public writing, as Gene referenced yesterday, which is available to everybody, that any further action would need legislative steps forward." The White House, *Press Briefing by Press Secretary Jen Psaki* (Aug. 3, 2021), https://bit.ly/2WX9vY0. It also mentioned that "the third extension of the moratorium that the CDC has—did since January would be the last extension." *Id.* And it expressed "concerns about what the impact could be on the long-term capacity abilities—authorities, I should say, of the CDC." *Id.*

### D. The CDC Extends the Eviction Moratorium for a Fourth Time

Yet later that same day, August 3, 2021, the CDC relented to the political pressure from Congress and the President by extending the eviction moratorium to October 3, 2021. CDC,

*Temporary Halt in Residential Evictions in Communities with Substantial or High Levels of Community Transmission of COVID-19 to Prevent the Further Spread of COVID-19* (Aug. 3, 2021), https://bit.ly/3fwOo53 ("CDC Order"). The "new order" has the same effect as the moratorium vacated by this Court, except it only applies "in counties with heightened levels of community transmission." *Id.* at 1. As the CDC acknowledged in its order, as of August 1, "over 80% of the U.S. counties" were covered by the latest extension. *Id.* at 5. And according to the President, the latest iteration of the eviction moratorium "covers close to 90 percent of the American people who are renters." The White House, *Remarks by President Biden on Fighting the COVID-19 Pandemic* (Aug. 3, 2021) https://bit.ly/3xszwea. Not surprisingly, the CDC's order contains no discussion of the agency's authority to extend the moratorium other than to note that the order was purportedly issued "under" Section 361 of the Public Health Service Act. *Id.* at 1 (capitalization altered).

In announcing the extension, the President conceded that "the courts" had already "made it clear that the existing moratorium was not constitutional; it wouldn't stand." The White House, *Remarks by President Biden*, *supra*. The President announced that the "bulk of the constitutional scholarship says that it's not likely to pass constitutional muster." *Id.* Yet the President candidly acknowledged that issuing the extension without legal authority was a delay tactic because, "by the time it gets litigated, it will probably give some additional time while we're getting that $45 billion out to people who are, in fact, behind in the rent and don't have the money." *Id.*

## LEGAL STANDARDS

A district court "has inherent power to enforce its decrees and to make such orders as may be necessary to render them effective." *Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 548 (D.C. Cir. 1988); *see also In re Grand Jury Subpoena No. 7409*, No. 18-41, 2018 WL 8334866, at *1–2 (D.D.C. Oct. 5, 2018), *aff'd*, 749 F. App'x 1 (D.C. Cir. 2018) (collecting cases); *Sierra Club v. McCarthy*,

61 F. Supp. 3d 35, 39 (D.D.C. 2014) ("District courts have the authority to enforce the terms of their mandates."). This can include injunctive relief to enforce an order. *See, e.g.*, *Pub. Citizen v. Carlin*, 2 F. Supp. 2d 18, 20 (D.D.C. 1998). A motion to enforce implicates "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984). "The Court should grant a motion to enforce if a 'prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it.'" *Sierra Club*, 61 F. Supp. 3d at 39 (quoting *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).

A stay may be granted—and remain in place—only when the government has made (1) "a strong showing that [it] is likely to succeed on the merits" and a showing that (2) it "will be irreparably injured absent a stay," (3) a stay will not "substantially injure the other parties interested in the proceeding," and (4) "the public interest" favors a stay. *Nken*, 556 U.S. at 434 (citation omitted). In ruling on the government's stay motion, this Court applied the sliding-scale approach, whereby "a movant may make up for a lower likelihood of success on the merits 'with a strong showing as to the other three factors, provided that the issue on appeal presents a 'serious legal question' on the merits." ECF 61, at 2–3 (citation omitted).

## ARGUMENT

All parties agree that the "Supreme Court's ruling" blocked the CDC from extending the moratorium because "'clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31.'" The White House, *Statement by White House Press Secretary Jen Psaki on Biden-Harris Administration Eviction Prevention Efforts*, *supra*. There is no question that the CDC's fourth extension of the moratorium conflicts with the Supreme Court's ruling because Congress did not pass new legislation authorizing another extension. The only question is

10

what this Court should do about it. The Court should enforce the Supreme Court's ruling by vacating the August 3 extension and the stay pending appeal to restore the status quo that a majority of the Supreme Court expected to exist after July 31.

I. **The CDC's August 3 Extension of the Moratorium Conflicts With the Supreme Court's Ruling.**

Justice Kavanaugh's controlling opinion was clear that the CDC could not extend the moratorium past July 31 absent "clear and specific congressional authorization (via new legislation)." *Ala. Ass'n of Realtors*, 141 S. Ct. at 2321 (Kavanaugh, J., concurring). The Executive Branch agrees. As the White House explained, the Supreme Court "made clear" that an extension of the moratorium was "no longer available. In June, when CDC extended the eviction moratorium until July 31st, the Supreme Court's ruling stated that 'clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium past July 31.'" The White House, *Statement by White House Press Secretary Jen Psaki on Biden-Harris Administration Eviction Prevention Efforts*, *supra*. The CDC's August 3 extension admittedly conflicts with the Supreme Court's ruling because Congress issued no new legislation authorizing the moratorium beyond July 31.

II. **The Court Should Clarify That the CDC's August 3 Extension of The Moratorium Is Covered by Its Vacatur Order Or Vacate the Extension Itself.**

To enforce the Supreme Court's ruling, this Court should either clarify that its order vacating the moratorium applies to the CDC's August 3 extension of the moratorium or, in the alternative, vacate that extension. *See Int'l Ladies' Garment Workers' Union*, 733 F.2d at 923 (ordering district court to enforce mandate after agency re-implemented the same rule that the D.C. Circuit vacated).

The August 3 extension is materially the same as the moratorium vacated by this Court and reviewed by the Supreme Court. Like each prior iteration of the moratorium, the fourth extension provides that property owners "shall not evict any covered person" during the effective date of the moratorium—subject to criminal penalties. CDC Order at 1, 17. The CDC relied upon the same

source of authority—Section 361 of the Public Health Service Act—that this Court and a majority of the Supreme Court agreed fails to provide authority for the eviction moratorium. *Id.* at 1. Although the fourth extension "applies in U.S. counties experiencing substantial and high levels of community transmission levels of SARS-CoV-2," *id.* at 12—which will cover at least 80% of counties and 90% of renters—the geographic scope of the moratorium had no bearing on this Court's or the Supreme Court's analysis of the CDC's statutory authority to issue the eviction moratorium. To view the extension as a new order would require this Court "to exhibit a naiveté from which ordinary citizens are free." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (citation omitted). Because the CDC extended the moratorium without new legislation, this Court should enforce the Supreme Court's ruling by vacating the CDC's August 3 extension of the moratorium.

Even if the CDC's August 3 extension did not conflict with the Supreme Court's ruling, this Court should still clarify that the CDC's latest iteration of the moratorium is covered by the vacatur order—or simply vacate it—for the same reasons it vacated the moratorium in May. This Court has already concluded that the CDC lacks authority to issue or extend an eviction moratorium. ECF 54, at 19-20. The latest extension of the moratorium is no more a lawful exercise of the CDC's authority than the previous iterations, even if this one purports to drop the moratorium's coverage by a small percentage. Especially in light of the recent statements by the White House, the government cannot argue with a straight face that this latest action does not "exceed[] the authority provided in § 361 of the Public Health Service Act, 42 U.S.C. § 264(a)." ECF 54, at 17.

Expedited relief vacating the fourth extension is particularly appropriate because the CDC appears to have issued the August 3 extension in bad faith. The CDC admittedly issued the August 3 extension without legal authority. Over the course of five days, the White House repeatedly stated that the CDC lacked the statutory authority to extend the moratorium because of the Supreme Court's

ruling. Yet the CDC issued the extension anyway, without even attempting to invoke a new source of statutory authority. The CDC's August 3 extension of the moratorium rebuts the presumption "that officials of the Executive Branch will adhere to the law as declared by the court." *Comm. on Judiciary of U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008).

Moreover, the CDC's explanation for the August 3 extension "is incongruent with" the political reality that the CDC extended the moratorium to relieve the political pressure on the White House and use litigation delays to buy more time to keep the unlawful order in place. *Dep't of Commerce*, 139 S. Ct. at 2575 (citation omitted). In fact, the President himself said as much about litigation providing more time: "[B]y the time it gets litigated, it will probably give some additional time while we're getting that $45 billion out to people who are, in fact, behind in the rent and don't have the money." The White House, *Remarks by President Biden*, *supra*. But the inability to administer a rental assistance program does not create statutory authority for the latest extension. The CDC's decision appears to have been made for political reasons under intense political pressure—despite the apparent claim that the agency acted for public health reasons. Indeed, the White House's announcement on July 29 that the CDC would not—and could not lawfully—extend the eviction moratorium received a massive blowback from Capitol Hill. Facing extraordinary political pressure, the CDC finally caved by issuing the August 3 extension with minor tweaks but no new source of legal authority. The CDC's August 3 extension may have solved a political problem in the short term, but has significantly undermined any semblance of credibility with respect to the extension.

## III. The Court Should Vacate The Stay Pending Appeal.

The Court should also vacate its May 14 stay order in light of the Supreme Court's ruling and because, if this Court clarifies that the vacatur order covers this latest extension of the moratorium, vacating the stay will be necessary to give Plaintiffs effective relief.

The Supreme Court's ruling compels vacatur of the stay pending appeal. Four Justices would have vacated this Court's stay order outright, which means they had necessarily determined that Plaintiffs' rights in this case, "which … could and very likely would be reviewed [by the Supreme Court] upon final disposition in the court of appeals, may be seriously and irreparably injured by the stay" and that this Court was "demonstrably wrong in its application of accepted standards in deciding to issue the stay." *Coleman*, 424 U.S. at 1304 (Rehnquist, J., in chambers). And in voting "at this time" to deny the application to vacate this Court's stay, Justice Kavanaugh agreed with this "Court and the applicants that the [CDC] exceeded its existing statutory authority by issuing a nationwide eviction moratorium." *Ala. Ass'n of Realtors*, 141 S. Ct. at 2320–21 (Kavanaugh, J., concurring). He also did not question that Plaintiffs' rights "may be seriously and irreparably injured by the stay." *Coleman*, 424 U.S. at 1304 (Rehnquist, J., in chambers). Instead, Justice Kavanaugh, noting that a "stay depends in part on balance of equities," declined to vacate this Court's stay order *solely* "[b]ecause the CDC plans to end the moratorium in only a few weeks, on July 31, and because those few weeks will allow for additional and more orderly distribution of the congressionally appropriated rental assistance funds." *Ala. Ass'n of Realtors*, 141 S. Ct. at 2321 (Kavanaugh, J., concurring). Because those conditions no longer exist, the stay order must be vacated.

To the extent that the government urges this Court to conduct a new application of the stay factors, it should decline the invitation. As the Supreme Court has repeatedly explained, it alone has "the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989). Unless and until that occurs, this Court must "follow the case which directly controls"—even in the face of changed circumstances. *Id.*; *see Agostini v. Felton*, 521 U.S. 203, 237–39 (1997) (emphasizing that lower courts may not conclude that even "a bona fide, significant change in subsequent law" has, "by implication, overruled an earlier precedent" of the Supreme Court).

That is true whether or not a directive from the Supreme Court can be characterized as formally binding. "Vertical stare decisis—both in letter and in spirit—is a critical aspect of our hierarchical Judiciary headed by 'one supreme Court,'" which is why the D.C. Circuit has held, for example, "'carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative.'" *Winslow v. FERC*, 587 F.3d 1133, 1135 (D.C. Cir. 2009) (Kavanaugh, J.). So just as "many lower courts quite understandably read" the Chief Justice's "*South Bay* concurrence" to guide their resolution of constitutional challenges to COVID-19 restrictions, this Court should *a fortiori* do the same with respect to Justice Kavanaugh's concurrence in the case here. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 71 (2020) (Gorsuch, J., concurring) (collecting cases); *see S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief); Hon. Trevor McFadden & Vetan Kapoor, *Symposium: The Precedential Effects of Shadow Docket Stays*, SCOTUSblog (Oct. 28, 2020), https://bit.ly/2WKelaP ("[W]hen a majority of the Supreme Court signals its views on the merits of an issue, even in a brief shadow docket order, lower courts should either defer to the court's ruling or justify a departure from that view."). If the government wants to relitigate the application of the stay factors in this context, it must do so before the Supreme Court.

At a minimum, the Supreme Court's ruling has eliminated a key premise on which this Court's stay order rested—namely, that the government, at that time, had "raised a 'serious legal question on the merits.'" ECF 61, at 7. It is now evident that five Justices agree with this Court that the CDC "exceeded its existing statutory authority by issuing a nationwide eviction moratorium," *Ala. Ass'n of Realtors*, 141 S. Ct. at 2320 (Kavanaugh, J., concurring), rendering any division in the lower courts beside the point. Because the government now cannot even raise a serious question on the merits, a stay pending appeal is no longer warranted, even under a sliding-scale approach.

15

## CONCLUSION

The Court should enforce the Supreme Court's ruling by clarifying that this Court's vacatur order covers the CDC's August 3 extension of the moratorium or setting aside that extension, vacating this Court's May 14 order granting a stay pending appeal, and issue any other relief the Court deems just and proper.

Dated: August 4, 2021                                    Respectfully submitted,

*s/ Brett A. Shumate*
Brett A. Shumate (D.C. Bar No. 974673)
Charlotte H. Taylor (D.C. Bar No. 1024658)
Stephen J. Kenny (D.C. Bar No. 1027711)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700

*Counsel for Plaintiffs*