UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALABAMA ASSOCIATION OF REALTORS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, <br><br> *Defendants.* | No. 20-cv-3377 (DLF) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the plaintiffs' Emergency Motion to Enforce the Supreme Court's Ruling and to Vacate the Stay Pending Appeal. Dkt. 67. For the reasons that follow, the Court will deny the motion.

**I.  BACKGROUND**

As part of the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, 134 Stat. 281 (2020), Congress enacted a 120-day eviction moratorium that applied to all rental properties receiving federal assistance. *See id.* § 4024(b), 134 Stat. at 492–94. When that moratorium expired, the U.S. Department of Health and Human Services (HHS), through the Centers for Disease Control and Prevention (CDC), imposed a broader eviction moratorium that applied to all rental properties in the United States. *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 Fed. Reg. 55,292 (Sept. 4, 2020). In December 2020, Congress granted a 30-day extension of that moratorium. *See* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 502, 134 Stat. 1182, 2078–79 (2020). The CDC then further extended it, first in January 2021 and then in March 2021. *See* Temporary

Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 8020 (Feb. 3, 2021); Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 16,731 (Mar. 31, 2021).

This Court vacated the CDC's eviction moratorium on May 5, 2021. *See* Mem. Op. of May 5, 2021, Dkt. 54. One week later, the Court issued a stay of vacatur pending appeal. Mem. Op. of May 14, 2021, Dkt. 61. In turn, on June 2, 2021, the D.C. Circuit declined to vacate the stay in an unpublished, *per curiam* judgment. Order of June 2, 2021, *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Human Servs.*, No. 21-5093, 2021 WL 2221646 (D.C. Cir. June 2, 2021).

On June 24, 2021, after the plaintiffs asked the Supreme Court to vacate the stay, the CDC again extended the eviction moratorium for a third time. *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 34,010 (June 28, 2021). In so doing, the CDC represented both in the extension order itself and to the Supreme Court that, "absent an unexpected change in the trajectory of the pandemic, CDC does not plan to extend the Order [beyond July 31, 2021]." *See id.* at 34,013; Letter from Acting Solicitor General Elizabeth Prelogar to Clerk of Court Scott Harris at 1 (June 24, 2021), *Ala. Ass'n of Realtors v. U.S. Dep't of Health & Human Servs.*, No. 20A169.

On June 29, 2021, the Supreme Court denied the plaintiffs' application to vacate the stay, based in part on the CDC's representation that it would not further extend the moratorium. *See Ala. Ass'n. of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2320, 2320 (2021) (Mem.) (Kavanaugh, J. concurring). Four Justices, however, voted to vacate the stay immediately. *Id.* And Justice Kavanaugh, whose vote to leave the stay in place was essential to the Court's disposition, made clear his view that the CDC "exceeded its existing statutory authority by issuing a nationwide eviction moratorium." *Id.* at 2320–21. Even so, Justice Kavanaugh

reasoned that "[b]ecause the CDC plans to end the moratorium in only a few weeks, on July 31, and because those few weeks will allow for additional and more orderly distribution of the congressionally appropriate rental assistance funds," the balance of the equities favored leaving the stay in place. *Id.* Thereafter, Justice Kavanaugh wrote, "clear and specific congressional authorization (via new legislation) would be necessary for the CDC to extend the moratorium." *Id.*

In the following weeks, the Biden Administration repeatedly stated that it would not further extend the eviction moratorium in light of the Supreme Court's ruling, which it interpreted to "mak[e] clear" the option "is no longer available." Pls.'s Reply at 1–2, Dkt. 71 (quoting White House, Statement by White House Press Secretary Jen Psaki on Biden-Harris Administration Eviction Prevention Efforts (July 29, 2021)). And the Administration stressed that the CDC agreed with this interpretation, stating that "the CDC Director and her team have been unable to find legal authority, even for a more targeted eviction moratorium that would focus [just] on counties with higher rates of COVID spread." Mot. Hr'g Tr. at 20 (quoting White House, Press Briefing by Press Secretary Jen Psaki and White House American Rescue Plan Coordinator and Senior Advisor to the President Gene Sperling (Aug. 2, 2021)).

Nonetheless, on August 3, 2021, three days after the prior policy lapsed, the CDC renewed a moratorium on evictions in the United States. *See* Temporary Halt in Residential Evictions in Communities with Substantial or High Transmission of COVID-19 to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 43,244 (Aug. 6, 2021). Scheduled to run through October 3, 2021, the current moratorium differs from its predecessor in that it applies only "in U.S. count[ies] experiencing substantial or high levels of community transmission levels of SARS-CoV-2 as defined by CDC." *Id.* at 43,245 (citations omitted). Otherwise, as discussed in

greater depth below, the current moratorium is virtually identical to the moratorium that the parties litigated before the Supreme Court.  *Compare id.*, *with* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 86 Fed. Reg. 34,010 (June 28, 2021).

On August 4, 2021, the plaintiffs filed an "Emergency Motion to Enforce the Supreme Court's Ruling and to Vacate the Stay Pending Appeal."  Dkt. 67.  In their motion in opposition, the government argued that the D.C. Circuit's June 2 judgment is the law of the case and so requires this Court to maintain the stay.  Dkt. 69.  The plaintiffs' motion is now ripe for review.

**II.     ANALYSIS**

Before addressing the plaintiffs' motion, the Court must first decide whether the current moratorium is an extension or an entirely new policy.  Because the current moratorium is an extension, it is subject to the stay and can be challenged in this action.  Even so, the law of the case doctrine prevents the Court from lifting the stay, and therefore, the Court will deny the plaintiffs' motion.

**A.     The Current Eviction Moratorium Is Subject to the Stay**

It is well-established that federal courts have the "inherent power to enforce [their] judgments."  *Peacock v. Thomas*, 516 U.S. 349, 356 (1996); *see also Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002) (noting that district courts' interpretive authority is connected to their enforcement authority); *Pfizer Inc. v. Uprichard*, 422 F.3d 124, 131 (3d Cir. 2005) ("[A] district court has inherent authority to ensure that prevailing parties are able to enforce prior judgments.").  Here, the plaintiffs ask the Court to either vacate the current moratorium or "simply clarify[] that [this Court's] original vacatur order covers it."  Pls.'s Br. at 2–3, Dkt. 67.  Given the procedural posture of this case, and because the plaintiffs seek to "clarify something ambiguous or vague, not to alter or amend," *United States v. Philip Morris USA, Inc.*, 793 F.

Supp. 2d 164, 168 (D.D.C. 2011) (citation omitted), this Court construes the plaintiffs' filing as a motion for clarification of the Court's May 5 vacatur order.  To resolve that motion, the Court must "pull back the curtain" to determine whether the current moratorium is "so related" to the prior moratorium that an order vacating the latter also applies to the former.  *Wash. Metro. Area Transit Auth. Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015).

The Court begins with the moratorium's text.  There are two substantive differences between the current moratorium and the moratorium that this Court considered on May 5, 2021.  First, the current moratorium is effective through October 3, 2021, and covers all evictions initiated but not finalized before the order's promulgation on August 3, 2021.  86 Fed. Reg. at 43,247, 43,250.  Second, the current moratorium applies only "in U.S. counties experiencing substantial and high levels of community transmission levels of SARS-CoV-2 as defined by CDC,"[1] *id.* at 43,250 (citations omitted)—a category that presently includes roughly ninety-one percent of U.S. counties, *see* CDC, *COVID Data Tracker: Integrated Country View*, https://covid.cdc.gov/covid-data-tracker/#county-view (last visited Aug. 13, 2021).  In contrast, the previous moratorium applied in all U.S. counties.  86 Fed. Reg. at 34,010.  Apart from these differences, the moratoria are virtually identical—the remainder of their definitions are the same, their exceptions are the same, their applicability provisions are the same, and the criminal penalties for violating those provisions are the same.  And the CDC designed the current

---

[1] The moratorium contains several provisions that further define the scope of its coverage.  To begin, the order applies in all counties that experience substantial or high transmission levels "as of August 3, 2021."  86 Fed. Reg. at 43,250.  From there, if an additional county experiences those transmission levels, "that county will become subject to this Order as of the date the county begins experiencing substantial or high levels of community transmission."  *Id.*  Additionally, if a county that is covered by the order "no longer experiences substantial or high levels of community transmission for 14 consecutive days," the order "will no longer apply in that county, unless and until the county again experiences substantial or high levels of community transmission."  *Id.*

moratorium to be continuous with its antecedents, insofar as it exempts persons covered under those antecedents from filing new declarations of eligibility.  *See* 86 Fed. Reg. at 43,245 n.7.

The minor differences between the current and previous moratoria do not exempt the former from this Court's order.  For obvious reasons, extending the effective dates of a vacated order does not evade the effects of the vacatur.  Indeed, consistent with that principle, both the government and the Supreme Court already considered one extension of the moratorium *in pari materia* with the version that this Court addressed in May.  *See* Letter from Acting Solicitor General Elizabeth Prelogar, *supra*; *Ala. Ass'n of Realtors*, 141 S. Ct. at 2320–21 (Kavanaugh, J., concurring).  Further, although the CDC has excluded some counties from the latest moratorium's reach, the policy remains effective nationwide, shares the same structure and design as its predecessors, provides continuous coverage with them, and purports to rest on the same statutory authority.  In the analogous context of the voluntary cessation doctrine, courts frown upon attempts to moot out legal challenges by repealing one rule and "replac[ing] it with a policy that is fundamentally similar."  *Am. Freedom Defense Inst. v. Wash. Metro. Area Transit Auth.*, 901 F.3d 356, 362 (D.C. Cir. 2018).  Rather, courts treat the replacement policy as merely a renewal of the challenged conduct, such that it is reviewable in the same action.  *See id.*  So too here.  Because the current moratorium is fundamentally similar to its predecessors, it is "so related" to them as to fall within the May 5 vacatur order.  *Reliable Limousine Serv.*, 776 F.3d at 9.

The government conceded this point at oral argument.  There, it explained that "the statutory basis for the new order is the same as the statutory basis for the previous order," Mot. Hr'g Tr. at 11, and that the few modifications to the former would not "necessarily be relevant under this Court's summary judgment ruling," *id.* at 12.  The government also disclaimed any

arguments that this case "was mooted out by the three-day lapse [in] the existence of a moratorium" or that the "plaintiffs needed to bring a new case." *Id.* at 11.  Finally, as a necessary predicate to its reliance on the law-of-the-case doctrine, the government argued that both this Court's rulings and "the preceden[ts] of the D.C. Circuit" continue to bind this Court. *Id.*[2]

For these reasons, the Court concludes that the current eviction moratorium is an extension of the vacated moratoria, such that it is subject to this Court's May 5 order and its subsequent stay pending appeal.  The plaintiffs' motion to vacate the stay is thus ripe for review.

B.      The Law-of-the-Case Doctrine Prevents the Court from Lifting the Stay

"When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay *sua sponte* or upon motion." *Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003).  The party seeking continuation of a stay "bears the burden of showing his entitlement to [it]." *Latta v. Otter*, 771 F.3d 496, 498 (9th Cir. 2014) (citation omitted).  In assessing whether to lift a stay, a court considers the traditional four stay factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).

---

[2] Having argued that the current moratorium is a mere extension of the old moratorium, that it is covered by this Court's May 5 order, and that the plaintiffs need not file a separate action to challenge its terms, the government is presumably estopped from arguing to the contrary on appeal.  *See Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."); *see also Davis v. Wakelee*, 156 U.S. 680, 689 (1895) (similar).

Rather than address any of these factors on the merits, the government argues that the law-of-the-case doctrine requires the Court to maintain the stay as a matter of law. Defs.'s Br. at 6–8, Dkt. 69. This Court agrees. Because the D.C. Circuit's judgment affirming the stay binds this Court and the Supreme Court did not overrule that judgment, the Court will deny the plaintiffs' motion.

As a general matter, the law-of-the-case doctrine provides that "a court involved in later phases of a lawsuit should not re-open questions decided . . . by that court or a higher one in earlier phases." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995). Under the doctrine, "the *same* issue presented a second time in the *same* case in the *same* court should lead to the same result." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). Additionally, when an appellate court has reached and necessarily decided an issue of fact or law, the doctrine provides that a district court in the same case "has no power or authority to deviate from" the appellate court's conclusion. *Briggs v. Pa. R. Co.*, 334 U.S. 304, 306 (1948); *see also Hodge v. Evans Fin. Corp.*, 823 F.2d 559, 567 (D.C. Cir. 1987) (holding that a "trial court is without power to reconsider issues decided on a previous appeal" (citation omitted)).

"For a ruling or decision to become the law of the case, it must . . . be final as to the matters involved." Bryan A. Garner, et al., *The Law of Judicial Precedent* 448 (2016). Finality in this context does not require a final, appealable judgment. *See Thomas v. Gandhi*, 650 F. Supp. 2d 35, 39 (D.D.C. 2009). Instead, the condition is satisfied whenever an appellate court has "affirmatively decided" a question of fact or law. *Crocker*, 49 F.3d at 739. Here, the government argues that three conclusions in the D.C. Circuit's judgment qualify as the law of the case: first, that the government was likely to succeed on the merits, *see Ala. Ass'n of Realtors*, 2021 WL 2221646, at *1–3; second, that the plaintiffs failed to show irreparable harm, *see id.* at

8

\*3; and third, that "the magnitude of any additional financial losses incurred during appeal is outweighed by HHS's weighty interest in protecting the public health," *id.* at \*4 (alterations and citations omitted). Because these are clearly affirmative decisions by that court, *see Crocker*, 49 F.3d at 739, and because the court reached them in this same case, the government is correct that they are binding here.

The plaintiffs argue that those conclusions are not the law of the case because the D.C. Circuit reached them in affirming a grant of emergency relief. For this purpose, the plaintiffs invoke *Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974), which held that "[t]he decision of a trial or appellate court whether to grant or deny a preliminary injunction does not constitute the law of the case for the purposes of further proceedings." *Id.* at 518. They also invoke *Belbacha v. Bush*, 520 F.3d 452 (D.C. Cir. 2008), which found that an "order denying preliminary relief . . . [did] not constitute the law of the case." *Id.* at 458 (citation omitted).

Neither of those holdings apply here. In *Berrigan*, the D.C. Circuit had granted emergency relief to two parolees after finding that their constitutional challenge was likely to succeed on the merits. *See* 499 F.2d at 517. Against that backdrop, *Berrigan* clarified that no law of the case prevented either "the parties from litigating the merits" or the district court from deciding the merits in the non-movants' favor. *Id.* at 518. Likewise, in *Belbacha*, the district court had denied a detainee's motion for a temporary restraining order, and the D.C. Circuit had also denied emergency relief. *See* 520 F.3d at 454–55. *Belbacha* confirmed that neither of those emergency decisions—including their subsidiary determinations that the detainee was unlikely to prevail on the merits—bound the district court in resolving the merits. *See id.* at 458. Both *Berrigan* and *Belbacha*, as the D.C. Circuit later explained, follow from the basic "element[s] of the law-of-the-case rule." *Sherley v. Sebelius*, 689 F.3d 776, 782 (D.C. Cir. 2012). When an

appellate court "predicts" who "*likely* will or will not succeed on the merits," it does not "affirmatively decide[]" the merits, and so creates no law of the case regarding them. *Id.* The same reasoning does not apply, however, when a district court must decide whether a movant is likely to succeed on the merits after a court of appeals has already resolved that same question in the same case. Neither *Berrigan* nor *Belbacha* suggest that the district court has discretion in that posture. Thus, although "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits," *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), they are binding on further requests for emergency relief.

A contrary approach to the law-of-the-case doctrine would produce absurd results whenever a district court and a court of appeals disagree over emergency relief. For example, if a district court granted a stay and a court of appeals vacated it, the plaintiffs' approach to the law-of-the-case doctrine would allow the district court to reissue an identical stay in the same case. That result would flaunt basic principles of vertical stare decisis—"a critical aspect of our hierarchical Judiciary headed by 'one supreme Court.'" *Winslow v. FERC*, 587 F.3d 1133, 1135 (D.C. Cir. 2009) (quoting U.S. Const. art. III, § 1). The same principles apply here, where the D.C. Circuit concluded that the government is likely to succeed on the merits and the plaintiffs ask this Court to vacate its stay on the opposite ground.

It is true that the Supreme Court's recent decision in this case strongly suggests that the CDC is unlikely to succeed on the merits. Four Supreme Court Justices voted to vacate the stay, "an action which would have been improbable if not impossible had the government, as the stay applicant, . . . made a strong showing that it was likely to succeed on the merits." *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 229 (4th Cir. 2020) (Wilkinson, J.). And while Justice Kavanaugh voted to uphold the stay, he squarely concluded "the Centers for Disease Control and

10

Prevention exceeded its existing statutory authority by issuing a nationwide eviction moratorium." *Ala. Ass'n of Realtors*, 141 S. Ct. at 2320 (Kavanaugh, J., concurring).

Other decisions from the federal courts of appeals further suggest that the government is unlikely to prevail. After full briefing and argument, the Sixth Circuit held that § 361 of the Public Health Service Act does not authorize the CDC to impose a nationwide eviction moratorium. *See Tiger Lily, LLC v. U.S. Dep't of Housing & Urban Dev.*, No. 21-5256, 2021 WL 3121373, at *5 (6th Cir. July 23, 2021). The court reasoned that the section's second sentence, which authorizes the "inspection, fumigation, disinfection, sanitation, pest extermination, [and] destruction of animals or articles" that are "sources of dangerous infection," clarifies the scope of its first sentence, which authorizes the CDC to promulgate regulations "necessary to prevent the introduction, transmission, or spread of communicable diseases." *Id.* at *2–3 (quoting 42 U.S.C. § 264(a)). Because imposing a nationwide eviction moratorium is not "similar to" those enumerated measures, the *ejusdem generis* canon excludes that option from the agency's toolkit. *Id.* at *3. The Sixth Circuit also responded to several arguments in the D.C. Circuit's judgment, including the theory that the second sentence of § 361 serves principally to provide "express congressional authorization under the Fourth Amendment" for the measures it describes. *Ala. Ass'n of Realtors*, 2021 WL 2221646, at *2 (first citing *Oklahoma Press Publ'g Co. v. Walling Wage & Hour Adm'r*, 327 U.S. 186, 201 & n.26–27 (1946), then citing *FTC v. Am. Tobacco Co.*, 364 U.S. 298, 305–06 (1924)). On that point, the court explained that neither case relied upon by the D.C. Circuit would have "placed Congress on notice that giving the Secretary authority to order inspections and fumigations would implicate the Fourth Amendment," particularly as *Oklahoma Press* was published two years *after* the enactment of the Public Health Service Act. *Tiger Lily*, 2021 WL 3121373, at *3 n.2.

The Eleventh Circuit also expressed "doubts" about the CDC's statutory arguments. *See Brown v. Sec'y, U.S. Dep't of Health & Human Servs.*, No. 20-14210, 2021 WL 2944379, at *2 (11th Cir. July 14, 2021). Judge Grant, writing for the majority, explained that the CDC's authority to regulate the spread of disease under § 361 is tethered to and narrowed by "the means" specified in its second sentence. *Id.* And Judge Branch, writing separately, concluded that "neither sentence of § [361(a)] authorizes the CDC Order" and that "the Order has not been statutorily authorized through Congressional ratification." *Id.* at *28–29 (Branch, J., dissenting).

These intervening decisions call into question the D.C. Circuit's conclusion that the CDC is likely to succeed on the merits. For that reason, absent the D.C. Circuit's judgment, this Court would vacate the stay.³ But the Court's hands are tied. The Supreme Court did not issue a controlling opinion in this case, and circuit precedent provides that the votes of dissenting Justices may not be combined with that of a concurring Justice to create binding law. *See United States v. Epps*, 707 F.3d 337, 348 (D.C. Cir. 2013) (holding that a *Marks* opinion "must embody

---

³ The government has not met its burden of showing that the equities cut strongly in its favor, particularly given its low likelihood of success on the merits. *See Cigar Ass'n of Am. v. FDA*, 317 F. Supp. 3d 555, 560 (D.D.C. 2018) (explaining that if "the issue on appeal presents a serious legal question on the merits," a movant may overcome a lower likelihood of success "with a strong showing as to the other three factors" (cleaned up)). Since this Court issued the stay, the government has had three months to distribute rental assistance; health care providers have administered roughly 65 million additional vaccine doses, *see* CDC, *COVID Data Tracker: Trends in Number of COVID-19 Vaccinations in the US*, https://covid.cdc.gov/covid-data-tracker/#vaccination-trends_vacctrends-total-cum (last visited Aug. 13, 2021); and the total cost of the moratoria to lessors, amounting to as much as $19 billion each month, has only increased, *see* Mem. Op. of May 14, 2014, at 9 (citation omitted). To be sure, the recent rise in Delta variant cases is troubling. But the government has made no attempt to show how many evictions its moratorium actually prevents, considering both the availability of federal rental assistance and the operation of other moratoria at the state level. Nor has the government identified any approach for evaluating when the compounding costs of the federal moratorium will outweigh its residual benefits. Given those omissions, the government has failed to make the necessary "strong showing." And because the absence of that showing warrants lifting the stay pending appeal, this Court need not address the plaintiffs' separate argument that the Administration "appears to have acted in bad faith" throughout this litigation. Pls.'s Br. at 3.

a position implicitly approved by at least five Justices who support the judgment" (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc))). Moreover, because the four dissenting Justices did not explain their votes, it is impossible to determine which proposed disposition—theirs or Justice Kavanaugh's—is the "common denominator" of the other. *Id.* at 348. Further, the decisions of Sixth and Eleventh Circuit do not bind this Court. And although district courts have discretion to reappraise the equities in extraordinary circumstances, this Court lacks the "power or authority" to reach the opposite conclusion of the D.C. Circuit on the same issues, in the same emergency posture, and in the same case. *Briggs*, 334 U.S. at 306.

To lift the stay, the plaintiffs must accordingly seek relief before the D.C. Circuit, which may depart from the law of the case when there is an "intervening change in controlling legal authority," *LaShawn A.*, 87 F.3d at 1393, or when a previous decision was "clearly erroneous and would work a manifest injustice," *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (citation omitted).

## CONCLUSION

Accordingly, it is

**ORDERED** that the plaintiffs' Emergency Motion to Enforce the Supreme Court's Ruling and to Vacate the Stay Pending Appeal, Dkt. 67, is **DENIED**. It is further

**ORDERED** that the Third Amendment Lawyers Association's Motion for Leave to File Brief as *Amicus Curiae*, Dkt. 70, is **DENIED AS MOOT**.

**SO ORDERED.**

———————————————
DABNEY L. FRIEDRICH
United States District Judge

August 13, 2021